## WILLIAMSPORT WIRE ROPE COMPANY *v.* UNITED STATES.

No. 337. Argued April 24, 25, 1928.—Decided June 4, 1928.

*Mr. James Walton,* with whom *Mr. Clarence A. Miller* was on the brief, for petitioner.

The decision of this Court in *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220, is controlling in this case.

The only theory upon which there could be jurisdiction in the Board of Tax Appeals, and still no jurisdiction in the federal courts, would be that Congress vested in the Board some particular added judicial power not heretofore exercised by the courts. The statute discloses the exact contrary. The Board has the most limited jurisdiction and merely serves to give the taxpayer an additional hearing before he is compelled to pay. § 900 (k), Act of 1924. In the event the decision is against the taxpayer, he will be required to pay the tax according to the assessment and have recourse to the courts for the recovery thereof. If the decision is against the Government, it will likewise have recourse to the courts.

The Senate committee, in reporting the tax bill, recognized clearly that a case under §§ 327 and 328 can be taken to court after a Board of Tax Appeals decision. No additional statutory jurisdiction having been conferred on the courts respecting such cases, they must have had this jurisdiction before the Board was created.

The court must compute the correct tax in every case where overpayment is contended by the taxpayer. In *United States* v. *Emery*, 237 U. S. 28, and *Rock Island R. R.* v. *United States*, 254 U. S. 141, this Court stated, in substance, that it was the Commissioner's duty to determine, assess and levy the tax, but that does not mean that a federal court may not compute the tax correctly when the Commissioner refuses to do it. To say that a court is without jurisdiction to compute and determine the correct tax is simply to say, in effect, that a court is without jurisdiction to render a judgment for a refund.

It is well settled that there can be no remedy by mandamus. Nor can there be any remedy by injunction to restrain the Collector. *Graham* v. *du Pont*, 262 U. S. 234. If there be any possible way to test the legality or

correctness of the amount of an income tax exaction other than to pay the tax and sue to recover, what can it be?

Solicitor General Mitchell for the United States.

In Blair v. Oesterlein Machine Co., 275 U. S. 220, it was held that the statutes giving the Board of Tax Appeals authority to review decisions of the Commissioner of Internal Revenue on determination of deficiencies were not subject to the limitation that the decisions of the Commissioner, making or refusing special assessments 'under §§ 327 and 328 of the Revenue Act of 1918, were not open to review.

The question here is whether the statutes giving to the Court of Claims jurisdiction to entertain suits to recover taxes erroneously or illegally assessed or collected, read in connection with §§ 327 and 328 of the Revenue Act of 1918, deny to the court the power to review the decisions of the Commissioner under those sections. We have been unable to find any ground for contending that the cases are distinguishable. If the statute giving the Board of Tax Appeals general jurisdiction to review the decisions of the Commissioner on deficiencies was not subject to any qualification as to special assessments, we see no reason why the general jurisdiction of the Court of Claims to award judgment for taxes illegally or erroneously assessed or collected should be so limited.

At present the decisions of the Board of Tax Appeals are reviewable in the Circuit Court of Appeals. If the decisions of the Commissioner under the special assessment sections are reviewable in the courts under that procedure, we see no reason why they should not be reviewable in the courts where the other course is followed and suit is commenced in the district court or the Court of Claims for the collection or the tax alleged to have been erroneously assessed.

Notwithstanding the decision in Blair v. Oesterlein Machine Company, the Court of Claims adheres to the

view that it has no jurisdiction in these special assessment cases, and it is necessary to submit the matter for the decision of this Court. The principal point seems to be that the Court of Claims cannot grant relief in such cases, because the determination of the true tax under §§ 327 and 328 involves an assessment of the tax. The Court of Claims also contends that its jurisdiction to award recovery for taxes illegally collected is limited to cases where the correct section of the Revenue Act has been applied by the Commissioner, but erroneously applied, and that where, as in this case, the Commissioner has applied § 301, which prescribes the general formula, and has refused to apply the special assessment sections, the Court of Claims may not itself determine what the true tax should have been under the special assessment sections.

Messrs. Adrian C. Humphreys and Newton K. Fox filed a brief as amici curiae, by special leave of Court.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Williamsport Wire Rope Company brought this action in the Court of Claims, on December 19, 1924, to recover the amount of an alleged overpayment of excess profits and war profits taxes for the calendar year 1918, laid under the Revenue Act of February 24, 1919, c. 18, 40 Stat. 1057. The petition alleged the following facts: The Company had conceded in its return, and had paid, a total tax of $306,381.77, for the year 1918. In April, 1920, the Commissioner of Internal Revenue levied upon it an additional assessment of $89,094.85, which the Company paid under protest. On June 10, 1924, a portion of the sum so paid was refunded. Four days later, the Company filed a claim for a further refund of $100,000. The claim alleged that for reasons there set forth, which are

repeated in the petition, the Company was entitled, under subdivisions (a) and (d) of § 327 of the Revenue Act of 1918, to have a special assessment made under § 328 of that Act.[1]  The Commissioner having failed to make the

[1] Sec. 327. That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

(b) In the case of a foreign corporation;

(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. . . .

Sec. 328 (a). In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year.  In the case of a foreign corporation the tax shall be computed without deducting the specific exemption of $3,000 either for the taxpayer or the representative corporations.

In computing the tax under this section the Commissioner shall compare the taxpayer only with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances.

(b) For the purposes of subdivision (a) the ratios between the average tax and the average net income of representative corporations

refund within six months after demand, this suit was brought. The Government demurred to the petition on the ground that the Court of Claims was without jurisdiction to grant the relief sought, and the demurrer was sustained. 63 Ct. Cls. 463. The case is here on certiorari. 275 U. S. 520.

In its petition for a writ of certiorari, the Williamsport Company alleged that its rights would presumably be determined by the decision in *Blair* v. *Oesterlein Machine Co.,* a case then pending in this Court; and the Solicitor General, being of the same opinion, did not feel justified in opposing the granting of the writ. Decision on the petition was postponed pending decision of the *Oesterlein* case. That case, 275 U. S. 220, was decided November 21, 1927. We there held that the exercise of the judgment or discretion of the Commissioner to allow or deny the special assessment provided for in §§ 327 and 328 was subject to review by the Board of Tax Appeals; and that therefore the taxpayer was entitled to an order compelling the Commissioner to respond to the subpoena of the Board issued under § 900(i) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 338, requiring him to answer interrogatories and to furnish information contained in the returns of other corporations. On November 28, the writ of certiorari in this case was granted. Thereupon, the Williamsport Company moved, presumably in analogy to motions to

shall be determined by the Commissioner in accordance with regulations prescribed by him with the approval of the Secretary. . . .

(c) The Commissioner shall keep a record of all cases in which the tax is determined in the manner prescribed in subdivision (a), containing the name and address of each taxpayer, the business in which engaged, the amount of invested capital and net income shown by the return, and the amount of invested capital as determined under ..uch subdivision. The Commissioner shall furnish a copy of such record and other detailed information with respect to such case when required by resolution of either House of Congress, without regard to the restrictions contained in section 257.

affirm under Rule 6, that the judgment against it be reversed on the authority of the *Oesterlein* case. The Solicitor General, while not opposing the motion, advised us that the Court of Claims had, since the decision of the *Oesterlein* case, adhered to the view that it was without power to determine whether the Commissioner of Internal Revenue had erred in refusing to make a special assessment under §§ 327 and 328. We then assigned the case for oral argument, without passing on the motion to reverse and remand.

The contention here is that, since the Commissioner's action was made reviewable on appeal by the Board of Tax Appeals, it is and was always reviewable in an original proceeding before the Court of Claims. The argument is that Congress has conferred upon the Court of Claims jurisdiction over suits to recover taxes alleged to have been " erroneously or illegally assessed or collected;" [2] that here its jurisdiction is invoked to recover taxes claimed to have been assessed illegally, because assessed under § 301 instead of under §§ 327 and 328; that it must therefore have power to determine whether conditions existed which entitled the Company to the special assessment provided for by §§ 327 and 328; that if it finds that such condition did exist, it must also have power to determine the true amount of the tax computed as therein directed; and that if it appears that the tax actually paid exceeds that which would have been exacted under the special assessment, the Court may award judgment for the difference.

---

[2] Recent statutes have used this phrase in describing the jurisdiction of the Court of Claims and the District Courts over suits by taxpayers to recover taxes. See Revenue Act of 1921, c. 136, §§ 1310(c), 1324(b), 42 Stat. 227, 311, 316; Revenue Act of 1924, c. 234, § 1020, 43 Stat. 253, 346. Compare Revenue Act of 1926, c. 27, §§ 284, 1111, 44 Stat. 9, 66, 114.

Sections 327 and 328 were intended to broaden the powers of relief first conferred by § 210 of the War Revenue Act of 1917, c. 63, 40 Stat. 300, 307.[3] It was "believed necessary to provide a special method of determining the tax for those cases in which the ordinary method of assessment would result in grave hardship or serious inequality." Senate Report, 65th Cong. 3d Sess., No. 617, p. 14. The special assessment is to be made under paragraph (a) when the Commissioner "is unable to determine the invested capital." It is to be made under paragraph (d) if he "finds and so declares of record that the tax if determined without the benefit of this section would . . . work . . . an exceptional hardship . . ." The task imposed on the Commissioner by §§ 327 and 328 was one that could only be performed by an official or a body having wide knowledge and experience with the class of problems concerned. For the requirement of a special assessment under paragraph (d) of § 327 and its computation in all cases, are dependent on "the average tax of representative corporations engaged in a like or similar trade or business."[4]

---

[3] Section 210 was liberally construed by the Treasury. See Regulations 41, art. 52 (T. D. 2694).

[4] At the time of passing the 1918 act Congress had before it the Report of the Commissioner of Internal Revenue for 1918. The Commissioner said of the administration of § 210 of the Act of 1917: "Returns filed under section 210 presented even more difficult problems as to the amount of invested capital that could properly be set up as being equivalent to the invested capital of representative concerns engaged in 'a like or similar trade or business.' Consequently, it was necessary for the Bureau to assemble, as promptly as possible, returns filed under these sections of the law and analyze them in the light of the facts disclosed by normal returns. Thousands of cases were examined in detail and subjected to comprehensive statistical studies to determine normal percentages of income to invested capital in different lines of business under varying conditions and circum-

To perform that task, power discretionary in character was necessarily conferred.[5] Whether, as provided in paragraph (d) of § 327, there are "abnormal conditions;" whether, because of these conditions, computation under § 301 would work "exceptional hardship;" whether there would be "gross disproportion" between the tax computed under § 301 and "that computed by reference to the representative corporations specified in section 328;" what are "representative corporations engaged in a like or similar trade or business;" which corporations are "as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances"—these are all questions of administrative discretion.

The soundness of the judgment exercised by the individual or body to whom the task was confided would depend largely upon the extent both of the knowledge of the special subject possessed and of the experience had in dealing with this particular class of problems. The conclusions reached would rest largely upon considerations not entirely susceptible of proof or disproof. Congress did not, by the Revenue Act of 1918, require the Commissioner to embody the results of his deliberation in findings of fact. The purpose of the meagre record prescribed by § 328(c) in case the Commissioner concludes to order a special assessment is apparently to protect the Treasury,

---

stances in order that a mode of procedure might be defined for treatment of cases under sections 209 and 210." P. 12.

[5] See House Report, 65th Cong., 2d Sess., No. 767, p. 19; Senate Report, 65th Cong., 3d Sess., No. 617, p. 14; remarks of Mr. Kitchin presenting the conference report to the House, 57 Cong. Rec. 3008; remarks of Mr. Simmons presenting the conference report to the Senate, 57 Cong. Rec. 3134–3135.

not the taxpayer.[6]  For if the Commissioner refuses to make the special assessment, he is not required to state the grounds of his refusal, or, indeed, even to record the fact of such refusal.  Thus the aims which induced Congress to enact §§ 327 and 328, the nature of the task which it confided to the Commissioner, the methods of procedure prescribed, and the language employed to express the conditions under which the special assessment is required, all negative the right to a review of his determination by a court.

It is true that where the Commissioner's action is reviewable judicially, his findings of fact in making an assessment, as distinguished from his determinations involving administrative discretion, constitute only prima facie evidence; and that, in cases arising under the internal revenue laws, such findings are commonly reviewable by courts in appropriate proceedings in which the facts become an issue.  *United States* v. *Rindskopf,* 105 U. S. 418, 422; *Wickwire* v. *Reinecke,* 275 U. S. 101, 105.  It is also true that in reviewing the Commissioner's findings on such matters as value, compare *Castner, Curran & Bullitt, Inc.* v. *Lederer,* 275 Fed. 221; *Little Cahaba Coal Co.* v. *United States,* 15 F. (2d) 863; allowances for depreciation, compare *Cohen* v. *Lowe,* 234 Fed. 474; *Camp Bird, Ltd.* v. *Howbert,* 262 Fed. 114; or the accuracy with which a taxpayer's books reflect his income, compare *In re Sheinman,* 14 F. (2d) 323, courts may be confronted with problems requiring a high degree of technical knowledge for their solution.  But such problems involve primarily the situation of a single taxpayer, and the controlling data can

---

[6] The Report of the Select Committee of the Senate on Investigation of the Bureau of Internal Revenue, Senate Report, 69th Cong., 1st Sess., No. 27, Pt. I, p. 221, contains a list of all refunds, credits and abatements exceeding $250,000 made through special assessments under § 210 of the Act of 1917 and § 328 of the Act of 1919.  Compare Pt. II, pp. 273ff.

easily be made available to the court. Here, the considerations which demand special assessment under § 327 (d), and those which govern its computation in all cases, are facts concerning the situation of a large group of taxpayers which can only be known to an official or a body having wide experience in such matters and ready access to the means of information.

The jurisdiction of the Court of Claims, if any, rests on statutory provisions which long antedate the Revenue Act of 1918. Its jurisdiction over suits to recover taxes is based on the clause in the original Act of February 24, 1855, c. 122, 10 Stat. 612, empowering it to determine " all claims founded upon any law of Congress." *United States* v. *Kaufman,* 96 U. S. 567, 569; *Dooley* v. *United States,* 182 U. S. 222. Compare *United States* v. *Emery, Bird, Thayer Co.,* 237 U. S. 28. But we have held that the Court of Claims is without jurisdiction where the statute creating the claim expressly refers it for final determination to an executive department. *United States* v. *Babcock,* 250 U. S. 328, 331. And that it is equally without jurisdiction where from an examination of all the terms of the statute it appears that Congress intended to vest final authority in an administrative agency. *United States* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 249 U. S. 451; *Silberschein* v. *United States,* 266 U. S. 221. Long ago Congress conferred final authority upon such an agency in the enforcement of the appraisal provisions by which the amounts payable under the customs laws are determined. Compare *Bartlett* v. *Kane,* 16 How. 263, 272; *Hilton* v. *Merritt,* 110 U. S. 97, 105; *Passavant* v. *United States,* 148 U S. 214.

Moreover, whatever jurisdiction is possessed by the Court of Claims to review determinations under §§ 327 and 328, would be possessed also by the district courts in suits against collectors and in actions against the United States, under § 24(20) of the Judicial Code. Thus the

determinations of the Commissioner in this delicate and complex phase of revenue administration would be subjected to review by a large number of courts, none of which have ready access to the information necessary to enable them to arrive at a proper conclusion in revising his decisions; whose experience in passing upon questions of this character would be limited; and whose varying decisions would tend to defeat, rather than promote, that equality in the application of the revenue law which §§ 327 and 328 were designed to insure. We conclude that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not, under the Revenue Act of 1918, be challenged in the courts—at least in the absence of fraud or other irregularities.

It remains to consider whether jurisdiction to review the Commissioner's action was conferred upon the Court of Claims as a result of the Revenue Act of June 2, 1924, c. 234, 43 Stat. 253, 336, which created the Board of Tax Appeals. There is nothing in that Act which purports to enlarge the jurisdiction of the Court of Claims or to extend the scope of judicial review over determinations of the Commissioner. The contention that it had this effect rests wholly on our decision in *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220. The contention fails to take account of the important differences between an appeal to the Board of Tax Appeals, on the one hand, and an original suit in the Court of Claims, or in a district court, on the other. The Board of Tax Appeals was created to perform the administrative functions theretofore discharged by the Committee on Appeals and Review, which the Commissioner of Internal Revenue had established in his office.[7] See House Report, 68th Cong. 1st Sess., No.

---

[7] The Revenue Act of 1918, c. 18, § 1301(d), 40 Stat. 1057, 1141, created an Advisory Tax Board to be appointed by the Commissioner with the approval of the Secretary of the Treasury. See House Re-

179, p. 7; Senate Report, 68th Cong. 1st Sess., No. 398, p. 8. The Committee had regularly reviewed determi-

port, 65th Cong., 2d Sess., No. 767, p. 38; Senate Report, 65th Cong., 3d Sess., No. 617, p. 58. The Commissioner might submit to the Board and on the request of a taxpayer must submit any question relating to the interpretation or administration of the income, war-profits or excess-profits tax. The functions of the Board were, in some degree, similar to those of the excess-profits tax advisers and reviewers who had aided the Commissioner in applying the 1917 act. See Report of the Commissioner of Internal Revenue, 1918, p. 13. Procedure as to the submission of questions and practice before the Board was established by Regulations 45, art. 1701 (T. D. 2831). The Board, which was organized on March 13, 1919, came to an end on October 1 of that year. Report, 1919, pp. 12–14.

The work that had been performed by the Advisory Tax Board was, however, immediately taken over by a committee of lawyers and accountants organized by the Commissioner in the Bureau. Report, 1919, p. 14. The procedure for taking appeals to this committee, which was known as the Committee on Appeals and Review, was laid down in O. D. 709, 3 C. B. 370. The nature of the work of this body is described in the Commissioner's Report for 1920, pp. 14–15, and for 1921, pp. 14–15.

Section 250(d) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 265–266, provided that if on examination of a return under the Acts of 1916, 1917, 1918, or 1921, a tax or deficiency in tax should be discovered, the taxpayer should be notified and given a period of not less than 30 days in which to file an appeal. See House Report, 67th Cong., 1st Sess., No. 350, p. 14; Senate Report, 67th Cong., 1st Sess., No. 275, pp. 20–21. The procedure for perfecting appeals under this section was laid down by T. D. 3269; Regulations 62, art. 1006 (T. D. 3409); and T. D. 3492. Appeals under this section appear to have been commonly handled by the Committee on Appeals and Review. See Rules of Procedure before the Committee, A. R. M. 219, Int. Rev. Cum. Bull. III-1, 319; Reports of the Commissioner for 1922, p. 15, for 1923, pp. 8–9, and for 1924, pp. 10–12.

The Board of Tax Appeals was created by § 900 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 336. Section 1100 of the same act, 43 Stat. 253, 352, repealed § 250 of the Revenue Act of 1921. By T. D. 3616 (July 16, 1924), all cases pending before the Committee and the Special Committee on Appeals and Review were transferred to the Solicitor of Internal Revenue, and the Committees were abolished. See also Report of the Commissioner for 1924, p. 12.

nations granting or denying special assessment under §§ 327 and 328.[8]   The granting of these powers of review to the Board of Tax Appeals did not change the character of the appeal.   And it affords no reason to conclude that Congress intended that the Court of Claims and the district courts should also be authorized to reëxamine the decisions of the Commissioner on questions of the character here involved.

It is true that, unlike the Committee, the Board of Tax Appeals is not a part of the Bureau of Internal Revenue. The Board is an independent agency.   But by specific provision of the Revenue Act of 1924, c. 234, § 900(k), 43 Stat. 253, 338, it was defined as an agency " in the executive branch of the Government."   Compare *Goldsmith* v. *Board of Tax Appeals*, 270 U. S. 117, 121–122. Its sole function consists in reviewing, on appeal, determinations of the Commissioner under the revenue laws. The fact that the Commissioner is a party to all cases before it enables the Board, by rules of procedure which it has developed, to leave to the Commissioner the initial determination of many questions requiring the use of facts not in the record.[9]   Its limited, specialized functions en-

---

[8] In the following cases the Advisory Tax Board or the Committee on Appeals and Review considered the question whether, under § 210 of the 1917 act or § 327 of the 1918 act, a special assessment ought to be made: T. B. M. 53, 1 C. B. 303; T. B. M. 58, 1 C. B. 304; A. R. R. 36, 2 C. B. 269; A. R. R. 70, 2 C. B. 287; A. R. M. 12, 2 C. B. 292; A. R. R. 19, 2 C. B. 298; A. R. R. 104, 2 C. B. 301; A. R. R. 110, 2 C. B. 303; A. R. R. 209, 3 C. B. 360; A. R. R. 332, 3 C. B. 362; A. R. R. 338, 3 C. B. 363; A. R. R. 363, 4 C. B. 14; A. R. R. 364, 4 C. B. 16; A. R. R. 464, 4 C. B. 17; A. R. R. 459, 4 C. B. 399; A. R. R. 518, 4 C. B. 401; A. R. R. 556, 5 C. B. 142; A. R. R. 538, 5 C. B. 301; A. R. R. 599, 5 C. B. 304.

[9] Rule 62, effective December 28, 1927, lays down the procedure in special assessment cases.   By paragraph (b) it is provided that the hearing may, in the discretion of the Board, on motion, be limited to the question whether the petitioner is entitled to have its tax determined under § 328 (or § 210).   Paragraph (c) provides that if the

able its members to acquire the extensive special knowledge and the specific experience essential to a sound exercise of judgment in dealing with questions arising under §§ 327 and 328.[10]  As was said in the *Oesterlein* case, *supra*, at p. 226, there is no reason for thinking that Congress considered the Commissioner to be better qualified for making determinations under §§ 327 and 328 than this administrative agency specially established to review his decisions.

*Affirmed.*

Board decides that the petitioner is so entitled, the Commissioner shall file within 60 days after such decision, a proposed redetermination showing the basis and method of the computation.  If, within 20 days after service by the Board upon the petitioner of a copy of such proposed redetermination, the parties are unable to agree on the amount of the tax, either party may move or the Board on its own motion may order that the case be placed on the calendar for further hearing.  See also Rule 50, Settlement of Final Determination, as amended April 28, 1928.

[10] The administration of the special assessment sections by the Commissioner was being investigated by a Select Committee of the Senate at the very time when Congress had the Revenue Bill of 1924 under consideration.  See Hearings before the Select Committee on Investigation of the Bureau of Internal Revenue, U. S. Senate, 68th Cong., 1st Sess., pursuant to S. Res. 168, p. 136.  Compare the final report of the committee, Senate Report, 69th Cong., 1st Sess., No. 27, Pt. I, pp. 6, 214–223, Pt. II, pp. 247, 280.  Congress plainly did not intend to remove altogether the right to a review of determinations under § 327 which, by virtue of § 1301(d) of the Act of 1918, § 250(d) of the Act of 1921, and the regulations of the Bureau, the taxpayer had theretofore enjoyed.