Sinnott, Judge,
delivered the opinion of the court:
The question herein is whether' market quotations used as a basis of fixing inventory values at market should be reduced by trade discounts and selling commissions. This case was referred to a commissioner of this court for a finding and report to the court of the facts. No exceptions thereto were filed by either party. The court, after an examination of the evidence, has adopted the findings of the commissioner.
Plaintiff’s inventory of finished yarn as of December 31,. 1920, the closing date of the year 1920, and incorporated as a part of its corporation income and profits tax return for that, year, gave a valuation of $228,636.82 on the basis of actual market quotations as of December 31, 1920, for the reason that market was lower than cost. Plaintiff in computing the inventory value of $228,636.82 did not take into consideration. *122 any selling commissions or trade discounts, and nothing was ■deducted by plaintiff from said inventory value in its income and profits tax return for the year 1920 on account thereof.
Plaintiff contends that $11,654.41, representing 5%, 3%, and 2% for selling commsisions and trade discounts in accordance with the table set forth in Finding VII, should have been deducted from said inventory value, for the reason that deductions of selling commissions and trade discounts are regular trade practices in arriving at market valuation. If plaintiff’s inventory is reduced by $11,654.41 on account of selling commissions and trade discounts, its net income will be correspondingly reduced, and it would be entitled to a refund of $8,121.03 as a reduction in the amount of the closing inventory for any closing year causes a reduction of like amount in taxable net income.
It may be well to remark here that said sum of $11,654.41 was not in fact paid by plaintiff, nor deducted by plaintiff during the taxable year 1920, but said amount represents that sum plaintiff would have had to pay or allow the trade for selling commissions and trade discounts had the finished goods listed in the said inventory been sold at the returned inventory prices on December 31, 1920, as is shown in Finding VII. It is the regular selling practice in the yarn trade, such as is herein involved, that buyers of yarn are allowed a trade discount of 2% or 3% and also it is the regular practice in the yarn trade for manufacturers to sell their products through commission houses or agents, who receive a selling commission of 5% on the net income, which they receive from the customer.
The following sections of the revenue act of 1918 (40 Stat. 1060), are applicable:
“ BASIS FOR DETERMINING GAIN OR LOSS
" Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be— . , , „ _ _ . „
. , , „ „ “ (1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and
*123 “ (2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.
* * * * *
“ INVENTORIES
“ Sec. 203. .That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.”
Said section 203 was reenacted verbatim in section 203 of the revenue act of 1921. (42 Stat. 231.)
In accordance with the authority conferred in said section 203, the following pertinent regulations relating to inventories were promulgated by the commissioner, with the approval of the Secretary:
“ The basis of valuation most commonly used by business concerns and which meets the requirements of the Revenue Act is (a) cost or (b) cost or market, whichever is lower. (For inventories by dealers in securities, see article 1585.) Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including secondhand goods taken in exchange, should be valued at bona fide selling prices less cost of selling whether basis (a) or (b) is used * * (Article 1582, Regulations 62.)
“ Inventories at market. — Under ordinary circumstances, and for normal goods in an inventory, ' market ’ means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor, and burden) in goods in process of manufacture and in finished goods on hand; * * (Article 1584, Regulations 62.)
Plaintiff’s inventory of its finished yarn was valued by it on the basis of actual market quotations as of December 31, 1920. This valuation was in compliance with the regulations, articles 1582 and 1584, supra. These regulations make *124 no provision for the deduction of trade discounts or selling commissions for products such as the plaintiff’s yarn, for which there was an established market, as is shown in Finding XI.
We are asked, in effect, to amend the said regulations of the commissioner, approved by the Secretary, so that said regulations may include deductions for selling commissions and trade discounts. It seems to us, both from the language of the statute in question and from the statement of the managers on the part of the House at the conference on the disagreeing votes of the two Houses when the revenue act of 1918 was passed, that the matter of determining the basis of inventories was one specifically confided by Congress to the commissioner and Secretary, and that with respect thereto power discretionary in character was necessarily conferred, and that their action can not be reviewed by this court in the absence of abuse of discretion on the part of the commissioner and Secretary.
Referring to section 203, supra, of the revenue act of 1918 the managers on the part of the House at.the conference made the following statement to the House:
“ This amendment provides that inventories for the purpose of determining net income under the income-tax title shall be taken upon the basis determined by the Commissioner of Internal Revenue, as conforming as nearly as may be to the best accounting practice in the trade or business.” (Congressional Record, volume 51, part 3, page 2987.)
It appears from the above statement of the managers that the inventory shall be taken upon the basis determined by the commissioner. This point is further made clear by (2) of section 202, supra, which provides for the use of inventory values if the inventory is made in accordance with section 203. It seems clear from the language of section 203 that the basis of the inventory was one explicitly confided by Congress to the commissioner, and to the Secretary. It is true that the commissioner, in section 203, is directed to conform, the inventories “ as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.” The language quoted is directory and not mandatory, and obviously confides to the *125 commissioner and Secretary the ascertainment of the best accounting practice in the trade or business. Article 1582 of regulations, supra, specifically points out “The basis of valuation most commonly used by business concerns and which meets the requirements of the revenue act is (a) cost or (b) cost or market, whichever is lower.” It is further pointed out in article 1584, supra, “ Under ordinary circumstances, and for normal goods in an inventory ‘market’ means the current bid price prevailing at the date of the inventory * * *."
We can not escape the conclusion drawn from the language of the statute itself that the basis of the inventories was one peculiarly confided to the commissioner; that to him was left the ascertainment “ of the best accounting practice in the trade or business,” which necessarily involves an examination of the practice of many business concerns, a task difficult for the courts, and one, which if entered upon by the courts, would, no doubt, result in many different bases for inventories, which at the best are not authentic in determining income, but can only approximate it within certain limits.
We believe the views herein set forth are sustained in Williamsport Wire Rope Co. v. United States, 277 U. S. 551, decided June 4, 1928, by the Supreme Court.
We conclude that the commissioner was correct in rejecting the claim for the refund. Petition will be dismissed. It is so ordered and adjudged.
GREEN, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.