BOYERTOWN BURIAL CASKET CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8000. Promulgated September 19, 1929.

*John E. Hughes, Esq.*, for the petitioner.
*A. C. Baird, Esq.*, and *A. H. Willey, Esq.*, for the respondent.

OPINION.

LITTLETON: The Commissioner determined a deficiency of $17,-767.84 for the calendar year 1919. He denied petitioner's application for a determination of its profits tax for 1919 under the provisions of sections 327 and 328 of the Revenue Act of 1918. The petitioner assigns this as error and also claims that the Commissioner erred in computing its invested capital for 1919, that he failed to allow the proper deduction for depreciation for 1919, and that he erroneously reduced invested capital on account of a dividend declared and paid out of 1919 earnings. The question here is whether the Board should vacate its order entered August 22, 1928, denying petitioner's application for subpœna duces tecum for the production by the Commissioner of certain documents with respect to his determination of petitioner's profits tax for 1918 under the provisions of section 328 of the Revenue Act of 1918 in order that, as petitioner contends, it might show that the Commissioner's computation of the profits tax for 1918 under section 328 was erroneous. In substance, the petitioner challenges the correctness of the order of the Board denying its application for a subpœna duces tecum. The question for decision in reality is whether the Board will, under section 272 (g) of the Revenue Act of 1928, go back, open up, and inquire into the correctness of the determination of the Commissioner in respect of his computation of petitioner's profits tax for 1918, a year not before the Board, and see whether the comparatives selected and used by the Commissioner for such prior year were proper, and if it be found by the Board that they were not proper, to require the Commissioner to select and use new and different comparatives and redetermine the profits tax for such prior year on the basis of such new comparatives as the Board might determine to be proper and then prorate the profits tax for 1918 as determined by the Board under section 328 in arriving at the invested capital for 1919.

The year involved in this proceeding is 1919. Prior to the hearing on petitioner's motion to vacate the order of August 22, 1928, and to grant its application for subpœna, petitioner had filed three amended petitions. The errors assigned in the last amended petition, which appear to supersede the original and the first and second amended petitions, are as follows:

(a) Respondent erred in computing petitioner's invested capital for 1919.

(b) Respondent erred in computing petitioner's net income for 1919 in that he failed to allow a proper deduction for the exhaustion, wear and tear of a building used during 1919 in petitioner's business.

(c) The respondent erred in deducting from petitioner's 1919 invested capital $76,931.51 by reason of a dividend declared and paid out of 1919 earnings.

(d) Respondent erred in holding that petitioner's 1919 profits tax "as computed under the provisions of Section 301 is not in excess of the average profits

tax paid by a group of representative concerns, which in the aggregate may be said to be engaged in a like or similar trade or business to that of your company."

Petitioner's application requests that a subpœna duces tecum issue requiring the Commissioner to appear before the Board at the hearing on its petition herein as to its tax for 1919 and bring with him the following documents:

1. The computations, lists and records whereby he determined the profits tax of the Boyertown Burial Casket Company under Section 328 for its calendar and taxable year 1918; also the tax returns of comparatives which he used in making said determination under Section 328, and the documents disclosing the final determinations by him of the tax liability of said comparatives, and carbon copies of the letters which he mailed to said corporations, evidencing said final determinations.

2. The original of the Revenue Agent's report on the petitioner for the year 1919.

3. The original and any amended income and profits tax return or returns filed by the petitioner for the year 1919.

4. The computations, lists and records disclosing the final determinations by the said David H. Blair of the profits tax liability for the calendar year 1918 of the following corporations:

Chicago Casket Company, Chicago, Illinois,

Northern Casket Company, Fond du Lac, Wisconsin,

and the computations, lists and records disclosing the computation by respondent of the final profits tax liability for its fiscal year ending June 30, 1919, of the New York & Brooklyn Casket Company of Brooklyn, New York. Also the income and profits tax returns filed by each of said corporations for the calendar year 1918 in the case of the first two named and for the fiscal year ending June 30, 1919 in the case of the New York & Brooklyn Casket Company.

After the petitioner had filed its second amended petition, a motion of the Commissioner was granted on August 15, 1928, limiting the hearing in the first instance in accordance with the procedure outlined in Rule 62 (a) of the Board's rules of practice. On the same day the third amended petition was filed and shortly thereafter the application for the subpœna duces tecum with which we are now concerned was filed. Following the receipt of the application for the subpœna, the Board issued an order denying the application.

The claim of petitioner that the Board should go back and open the special assessment matter for 1918 and review the Commissioner's determination for such year is made under its assignment of error that " respondent erred in computing petitioner's invested capital for 1919 " and authority for such claim is predicated upon section 272 (g) of the Revenue Act of 1928, which is as follows:

*Jurisdiction over other taxable years.*—The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to

determine whether or not the tax for any other taxable year has been overpaid or underpaid.

We think the claim of the petitioner here made goes far beyond that which was intended by the foregoing section. The Board is not being asked to consider facts that relate to the tax for another taxable year, but that we reopen the determination for a prior year and review the discretion of the Commissioner in the selection of comparatives under section 328 of the Revenue Act. This would necessitate an entire reconsideration of the action of the Commissioner in allowing special assessment for 1918, involving questions in no wise common to or effecting 1919 or any other year. Special assessment at best is the exercise of judgment and discretion, *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, and while this Board has authority to review the determination of the Commissioner in special assessment cases, *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220, we think, as the statute now stands, this review by the Board of special assessment by the Commissioner should not extend beyond his determination for the year involved in the proceeding before the Board, because special assessment is a question that is in every case strictly confined to a particular year. The fact that there might or might not be abnormalities in a particular taxable year does not mean that special assessment should be granted for another taxable year. There are many questions arising in respect of taxable years before the Board in which the Commissioner has determined deficiencies which affect the taxes for other taxable years and because thereof have a direct bearing upon the deficiencies for the years involved. An example of such error occurred when the petitioner failed to capitalize an item, but charged such an item to expense. Under such circumstances the petitioner could assign as error in the year involved before the Board that invested capital was understated because there was not included therein an item of capital cost, which had been expended in a prior year. To make proper correction on account of the error assigned, the Board would consider facts with relation to the prior year or years in order to make proper adjustment to surplus as of the beginning of the year before us. Similarly, the Board may consider facts relating to prior years because of an assignment of error in a given year on account of inadequate depreciation, where depreciable costs were not properly set up in prior years.

So far as this record shows, the statute of limitations has run in respect of the year 1918. Whether it has or not would be one of the questions which the Board would of necessity be required to determine under the claim made, for if the tax determined for 1918 has been paid, surplus has been reduced to the extent of such payment. When paid the amount passed out of invested capital and

effect may not be given to the excess of such payment on invested capital in a subsequent year when the statute of limitations precludes the return of such excess, or recovery thereof. *Maritime Securities Co.*, 2 B. T. A. 188. The Commissioner has made his final determination for 1918 and apparently the tax determined by him for that year has been paid. Petitioner now claims that the tax as determined by the Commissioner for 1918 was $429,598.10, and that the proration of this tax operated to reduce petitioner's invested capital for 1919 in the amount of $181,548.16. Petitioner claims that more than $300,000 of this tax represented a profits tax determined by the Commissioner under section 328 and that if the Commissioner had used proper comparatives in such determination, the profits tax would be much less than $300,000. Petitioner says, therefore, that if the Board will open up the matter and permit it to subpoena the Commissioner and require him to bring the comparatives selected and used by him and various other documents, it will be able to show that the comparatives selected and used by the Commissioner resulted in too high a profits tax for 1918 and that the ones it will have produced will, it thinks, show a much lower profits tax. There is no claim or showing that petitioner could not have brought the 1918 determination of the Commissioner before the Board had it desired to do so. If the Commissioner's determination with regard to special assessment for a prior year was satisfactory to the taxpayer when made, or as good as it thought it could hope for, as appears to have been the situation as to 1918, and the taxpayer takes no further action in the matter, it should not be permitted to have the entire matter reopened and reconsidered by the Board on an invested capital claim in a subsequent year simply because in the meantime something has happened that leads the taxpayer to think that perhaps one of the corporations which the Commissioner may have selected and used in connection with his prior special assessment determination was not a proper one. Counsel for the petitioner says that under section 328 a corporation which has abnormalities in income or invested capital may not be used as a comparative in computing the profits tax of another corporation under section 328; that he thinks the Commissioner used the National Casket Company as one of the comparatives in determining petitioner's profits tax for 1918 and that if he did, this was error because subsequently the Board in the proceeding of the *National Casket Co.*, 3 B. T. A. 954, held that that corporation was itself entitled to special assessment for 1918. Therefore, he says, the Commissioner's determination of petitioner's profits tax for 1918 was wrong and this Board should inquire into it and select new comparatives and make a new computation of the profits tax for that

year. Conceding that the National Casket Co. was used by the Commissioner as a comparative, although this does not appear, the Commissioner at the time of his determination did not consider that it was a corporation which itself had abnormalities of income or capital. So far as he could determine, it was a proper comparative under the statute and this is all the law requires of him in making a determination under section 328. When the Board hears and determines a special assessment case, if abnormalities are found, it considers such corporations as comparatives as the parties may bring forth, and finally makes a determination, with particular corporations being used as comparatives in computing the profits tax. We do not inquire into the affairs and conditions surrounding each corporation offered as a comparative, to determine whether it might have abnormalities and therefore is not a proper comparative. It might very well be that after the Board has made a determination and entered its decision in respect of a taxpayer upon the basis of special assessment one of the corporations which had been used as a comparative would bring its case for the same taxable year before the Board, claiming special assessment, and succeed. Would the fact that such corporation had previously been used as a comparative authorize the taxpayer in whose case it was used to have the Board, in a proceeding by such taxpayer for a subsequent taxable year, reopen and reconsider the determination previously made and go anew into the selection of the comparatives for such previous year? We think not. A special assessment case which has been considered, determined and closed by the Commissioner will not be reopened and reconsidered by the Board on an invested capital claim of the taxpayer in a subsequent year upon the ground that the petitioner thinks such prior determination of the Commissioner might have been erroneous.

In *Cornelius Cotton Mills*, 4 B. T. A. 255, the Board said:

* * * In determining the correct amount of the deficiency we may consider such facts with relation to taxes for other taxable years as may be necessary correctly to redetermine the amount of the deficiency involved; for example, in determining the invested capital for the year for which the deficiency against a corporation has been determined, we may determine what was the tax liability during a preceding year.

But this case did not involve special assessment determined for a prior year and is not to be interpreted as meaning that, where the change sought in invested capital is due solely to the fact that the tax has been overpaid or underpaid for such prior year or years, the Board will take jurisdiction and give effect to such overpayment or underpayment in determining invested capital for the year before us, regardless of whether the statute of limitations has expired. If

the Board is to review the tax determination of a prior year solely because of the effect which the tax liability for such year may have on the invested capital of the year before it, it must be shown that the statute of limitations has not run. If petitioner is correct in insisting that under section 272 (g) the Board is required to allow its claim, every corporation appearing before the Board that might have been granted special assessment in a prior year or years could require the Board up until 1921 to reopen and reconsider the Commissioner's determination of this question for all prior years to and including 1917 in order to compute invested capital for the taxable year involved. We are of the opinion that this goes beyond the intent of section 272 (g).

About a month after the hearing on petitioner's motion herein, counsel for petitioner filed a motion that it be permitted to file a fourth amended petition amending paragraph (a) of page 3 of its third amended petition by adding thereto the following:

Petitioner filed its 1918 income and profits tax return about June 15, 1919. Before June 15, 1924, it filed a waiver of the right to have its 1918 income and profits taxes determined and assessed within five years from the date of filing its return. In the year 1923 it filed with the Commissioner of Internal Revenue a claim for assessment of its 1918 profits tax under Section 328 and for the refund of so much thereof as it was legally entitled to by reason of said assessment. In December 1924, the Commissioner of Internal Revenue allowed said claim for the refund of $2,866.31 and to date has not rejected the same or any further or additional sum.

We think the petitioner has been afforded a sufficient number of opportunities to amend its petition and that this proposed amendment coming, as it does, after the hearing, is too late. Even if the amendment be allowed, it would not appear that the waiver which counsel for petitioner says was filed has not expired.

The motion of petitioner to vacate the order of August 22, 1928, and to grant its application for a subpœna is therefore denied. The proceeding will be restored to the calendar for hearing in due course upon the errors assigned as to the Commissioner's determination for 1919.

Reviewed by the Board.