### AMERICAN CHEMICAL PAINT CO. v. McCAUGHN, Collector of Internal Revenue.

### No. 11030.

District Court, E. D. Pennsylvania.

April 21, 1937.

On Motion to Reform Opinion and for Rehearing Sept. 10, 1937.

Pierce Archer, Jr., of Philadelphia, Pa., and Percy W. Phillips, of Washington, D. C., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Andrew D. Sharpe and E. E. Angevine, Sp. Assts. to Atty. Gen., and James W. Morris, Asst. Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This action at law, brought by a corporation taxpayer to recover additional income and excess profits taxes paid under protest, was tried to the Court, jury trial having been duly waived.

The Facts

A written stipulation covering all the facts necessary to the determination of the case was filed and is adopted as the Court's special findings of fact. A summary may be useful.

The taxes involved are for the year 1919. In its return for that year the plaintiff computed an income tax of $1283.07 and an excess profits tax of $487.87.

On August 29, 1921, the plaintiff received the report of an internal revenue field agent indicating additions to both income and excess profits amounting together to $13,277.84. The basis for this report was the total disallowance of the value which the plaintiff had put upon a patent which it owned and under which it carried on a large part of its business. This resulted in increasing the income tax by disallowing annual depreciation of some $26,000, and in increasing excess profits by reducing the invested capital by $455,000.

On September 13, 1921, the plaintiff wrote a letter to the Commissioner of Internal Revenue referring to the agent's report and saying: "Before putting the charge through, this Company is anxious

to appear before you praying relief. If you will please inform us when we may appear before your Board for the purpose of showing that we are entitled to relief, you will greatly oblige. * * *"

The next step was the Commissioner's letter of September 19, 1921, to the plaintiff notifying it that the Department claimed and would proceed to collect an additional tax of $12,846.57. Apparently the Commissioner had decided to allow some small value for the patent, though, of course, nothing like what the plaintiff desired.

On October 21, 1921, the plaintiff sent a letter, accompanied by a brief, to the Commissioner, stating that it was presenting its reasons why the assessment of additional tax for 1919 was unjust, etc., and concluding, "wherefore the said Company prays for relief from such assessment, under the law and regulations governing these matters." The brief was entirely devoted to an argument intended to show that the patent was worth the $455,000 originally returned as its value.

The next thing that occurred was that on August 3, 1922, the Commissioner wrote the plaintiff a letter, and a statement which began, "your application for assessment of your profits tax for the year 1919, under the provisions of Section 328 of the Revenue Act of 1918 [40 Stat. 1093], has been allowed * * *," resulting in a profits tax of $8,002.12. There was also an additional income tax disclosed of $3,214.72, making a total additional tax, income and excess profits, over the tax-payer's original computation, of $9,446. Although thus advised that the Commissioner had made a special assessment the plaintiff did not protest or raise any question about the procedure in computing the excess profits tax under Sec. 328, but filed another letter about two months later protesting only the amount of the new assessment, and sent with it another brief entirely devoted to additional arguments to show why the value claimed for the patent should be allowed.

Then, on February 3, 1923, the plaintiff wrote a letter to the Commissioner, which it requested be considered as "formal application to your Department for relief" under Secs. 327 and 328, 40 Stat. 1093. It contains the following reservation or condition:

"American Chemical Paint Company expressly reserves its right, if dissatisfied

with the amount of the tax so assessed, to appeal to the Courts and to have the value of its patents established as though it had not applied for relief under the said Sections of the said Act. If your Department, under the law, is unable to assess the said Company's tax under the said Relief Sections, without prejudicing the right of American Chemical Paint Company to ask the Courts to determine the value of the patents as invested capital, then send bill for excess tax without reference to the said Relief Sections, when American Chemical Paint Company will pay the said tax under protest."

Both before and after this letter there must have been conferences between the taxpayer and the Department. This appears, not from the stipulation, but from the plaintiff's statement of claim. What position the plaintiff took at those conferences or hearings does not appear.

Later, in 1923, the plaintiff received notice and demand for the additional tax and paid it under protest. Thereafter and in due time the plaintiff filed its claim for refund, assigning ten reasons. The first three reasons complain generally of the refusal to give the patent the value which the plaintiff claimed for it. The fourth reason was, "because the Bureau of Internal Revenue determined the said additional tax of $9446.00 under the provisions of Sections 327 and 328 of the Revenue Act of 1918." The next five remaining reasons all complain that the Commissioner in proceeding under Secs. 327 and 328 failed to give the patent the value for which the plaintiff contended, and the last reason was a general one stating merely that the tax was contrary to law, etc.

In a distinct, and much later, proceeding involving the plaintiff's 1927 income tax, the Circuit Court of Appeals for the Third Circuit, American Chemical Paint Co. v. Commissioner, 66 F.2d 381, held that the patent was worth $455,000, and sustained the plaintiff's claim for allowance for depreciation, exhaustion and amortization of the patent upon the basis of that value for that year.

## Discussion

First, as to the income tax: There is no question that the taxpayer has taken all the steps necessary to obtain a review of this assessment by the Court. There is no suggestion that anything has occurred which amounts to an estoppel or divests the Court of the jurisdiction to review the Commissioner's assessment. The decision of the Circuit Court of Appeals has fixed the value of the patent and the correct amount to be allowed for depreciation. The taxpayer's income tax is therefore, in accordance with Paragraph 19 of the stipulation, fixed at $659.21.

Second, as to the excess profits tax: The additional excess profits tax was assessed under Secs. 327 and 328. There is no dispute about that. If the Commissioner adopted the special assessment procedure "upon application by the corporation" (Sec. 327(d) then, in the absence of fraud, this Court is clearly without jurisdiction to review his findings.

The Commissioner's action was taken as the result of a letter from the taxpayer praying for "relief from such assessment (that is an assessment made under Section 301 [40 Stat. 1088], in the ordinary way), under the law and regulations governing these matters." This the Commissioner took as an application by the corporation for special assessment under Section 328 and acted accordingly. The taxpayer was promptly advised of this and of the new assessment so made, but did not protest the method adopted or suggest that the Commissioner had misinterpreted its request for relief. Instead it merely filed a brief asking for a revision of the assessment, confining its reasons to the single question of the value of the patent. Months later it attempted to put itself in the position of being able to withdraw, in case it could not get the special assessment reduced, by filing what it called a "formal" application for relief under Section 328, coupled with a reservation of the right, if dissatisfied with the result of the special assessment, to pursue its remedies in the courts as though it had never been made. Obviously, it could not do this. Formal or informal, an application for relief had been already made which had been interpreted and acted upon as a request for relief under Sec. 328, in which interpretation the plaintiff had acquiesced.

All this leaves very little doubt that the plaintiff intended its prayer for relief to be application for special assessment under Sec. 328, and I make the fact finding that it did. It is not a question of estoppel. The taxpayer had the right to elect a non-justiciable method of computing its tax,

but if it did so it thereby put itself beyond the assistance of the Court, of course, it being assumed that no fraud or other equitable question was involved. This is clearly the holding of all the latest cases in the Supreme Court, and particularly Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L. Ed. 985, and Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921. The only case in which any support for a contrary view can possibly be found is the much earlier decision in United States v. Supplee-Biddle Hardware Co., 265 U.S. 189, 44 S.Ct. 546, 68 L.Ed. 970. In that case, in spite of assessment under 327 and 328, the Court apparently revised and applied the Tax under Sec. 301. The question of the jurisdiction of the Court does not appear to have been raised at any point, and, in view of the later decisions, I do not believe that Supplee-Biddle Case can be taken for authority for the plaintiff's position.

The two methods of assessment provided by the act are mutually absolutely exclusive. If the parties elect by agreement the special assessment under 327 and 328 it becomes the taxing law applicable to their case. The plaintiff, having so elected, can not now avoid the consequences of his speculation in placing himself in the hands of the Commissioner under Secs. 327 and 328.

Had the letter of February 3 come from the plaintiff at the beginning of this transaction, and had it been the basis of the Commissioner's special assessment, I would hesitate to say that the plaintiff had made "application" for special assessment. The Commissioner, I rather think, would have been bound to advise the plaintiff that conditional compliance was not possible under the law and could have insisted that the plaintiff apply unconditionally under penalty of refusing to take the action desired.

That, however, was not the case. The plaintiff's letter of February 3, 1923, was very carefully worded. The plaintiff did not suggest that it was its first application for special assessment under Sec. 328 nor call it an application, generally. In view of what had passed already, the inference is not unwarranted that the plaintiff chose the word formal because it had in mind an earlier application, which it found it convenient to ignore as informal and therefore ineffective.

## Additional Finding of Fact

The plaintiff intended its letters of September 13 and October 21, 1921, to be applications for special assessment under Secs. 327 and 328 of the Revenue Act of 1918; and the Commissioner so understood them and made the special assessment as a result of such understanding.

## Conclusions of Law

The plaintiff's first six requests for conclusions of law are denied.

The plaintiff's seventh and eighth requests for conclusions of law are affirmed.

The defendant's request for the conclusion of law, that the plaintiff is not entitled to recover, is affirmed so far as it applies to the amount of additional assessment for excess profits tax. It is denied so far as it applies to the amount of additional assessment for income tax.

Judgment may be entered for the plaintiff for $2555.51 with interest from October 23, 1932.

## Sur Plaintiff's Motion to Reform Opinion and Vacate Additional Finding of Fact and Defendant's Motion for Rehearing.

I have carefully re-examined this entire case, and I am thoroughly convinced that I was entirely wrong in my understanding of the intent and effect of the plaintiff's letter of September 13, 1921 and the letter of August 3, 1922, from the office of the Commissioner of Internal Revenue, signed by a deputy commissioner. The latter is certainly ambiguous and very misleading—a really outstanding example of official obscurantism. The "statement" accompanying the letter does say quite plainly, "Your application for assessment * * * under the provisions of Section 328 * * * *has been allowed*", and it refers to "the method by which your tax *has been determined.*" However, if this part of the statement be read in connection with the letter, in the light of what appears to be conceded to have been the practice of the Department then in force, there seems to be no doubt that it simply does not mean what it says.

In spite of the language of the statement, it is quite clear that no assessment had been made. Exhibit 7 in evidence by stipulation, shows that the assessment was not made until September, 1923. The letter says, "You will be given full opportunity to present to the Income-tax Unit any additional evidence bearing upon the mat-

ter or to submit any reasons why an assessment should not be made." It is also conceded that the letter is a form letter, then in common use, and that the real purpose of it was to inform the taxpayer as to what the amount of his tax would be if he should apply for special assessment. It appears to have been quite usual to send out letters of this kind whenever a corporate taxpayer protested an assessment under the statutory rates.

I am also satisfied that the taxpayer did not intend its letter of September 13, 1921 or of October 21, 1921 as applications for special assessment. They are general requests for relief and do not refer in any way to the special assessment sections of the Revenue Law. The reasons and brief submitted with them are exclusively directed to the valuation put upon the patent a matter totally immaterial and outside the procedure under the special assessment sections.

This leaves the taxpayer's letter of February 3, 1923 as the only thing in the case resembling an application by it for special assessment. I indicated in the original opinion what I thought about that. Apparently, it was written in compliance with two letters of the Commissioner which have been lost and are not in evidence but which seem almost certainly to have contained a suggestion of some kind that the taxpayer could or should make application for special assessment—an indication, at least, that the Commissioner did not understand that such application had already been made.

The application embodied in the letter of February 3 was not an unqualified one. The situation was somewhat peculiar. The taxpayer had been assessed for an additional $13,227.84 under the statutory rates. He had also been told, that, under the special assessment sections, his tax would be $9,446. He had evidently been advised or believed that if he made application for special assessment, it might result in his losing all rights to contest his tax in the courts, and being limited to the review in the Department only. He plainly did not want to accept the comparatively small reduction which the special assessment would give him if so doing would cost him his right to contest the bulk of the tax.

What he said in effect was: "You have suggested that I apply for special assessment. You can treat this letter as such application, but not if, under the law, it will cost me my right to contest the tax. If that is the law, then disregard this altogether and send me my bill for the $13,227.84, so that I can contest it in the courts."

This is not quite the case of a taxpayer who desires to gamble with the special assessment provisions and preserve the right to resort to the courts at the same time. This taxpayer knew exactly how much relief he would get under the special assessment provisions, and he did not want it if it was going to interfere with his proceeding to obtain a larger measure of relief in the courts.

The defendant had cited Cleveland Automobile Co. v. U. S., 6 Cir., 70 F.2d 365, as authority for the rule that if the Commissioner accepts a conditional and qualified application, the taxpayer loses his rights at law. I do not think the case goes quite that far. In it, the Commissioner had assessed an income tax, and the taxpayer had made a claim for refund. Then the taxpayer made an unqualified application for special assessment. It is pretty clear from the statement of the case that, at that time, both parties must have been acting in the belief that the application for special assessment did not oust the jurisdiction of the courts. The Commissioner said in effect, "I will grant special assessment if you will agree that the statutory assessment is correct." The taxpayer refused to so agree and reserved the right to contest it if the special assessment was not satisfactory. The Commissioner then went ahead with the special assessment, and it was held that the court remedy was superseded. The point of difference was, in that case, the interchange apparently began with an unconditional request. The Commissioner attempted to impose a condition before he granted it. The taxpayer refused, and the Commissioner then took proceedings under Section 327 and 328, in accordance with the taxpayer's application.

For the reasons stated in this supplemental opinion, I vacate the additional finding of fact, and the rulings upon the requests made in my opinion. I make the following findings of fact:

■ The plaintiff did not intend its letters of September 13 and October 21 to be applications for special assessment under Section 327 and 328 of the Revenue Act of 1918.

In making the special assessment, the Commissioner acted upon what he considered to be an application by the taxpayer, contained in the letter of February 3, 1923.

I also hold as a matter of law that the letter of February 3, 1923 was not an "application by the corporation" within the meaning of Section 327(d) of the Revenue Act.

The special assessment, having been made by the Commissioner without application by the corporation, had no effect upon the rights of the plaintiff in this or in the courts generally.

The plaintiff's first six requests for conclusions of law are affirmed.

The defendant's request for conclusion of law is denied.

Judgment may be entered for the plaintiff for $9,087.34 with interest thereon at six per cent per annum from October 23, 1923.