## OAK WORSTED MILLS v. UNITED STATES.
### No. J–180.

Court of Claims.
Feb. 17, 1930.

Guil Barber and William Meyerhoff, both of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, LITTLETON, and GRAHAM, Judges.

GREEN, Judge.

On the submission of this case it was contended by counsel for plaintiff that the tax in this case, having been determined under the so-called relief provisions of sections 327 and 328 of the Act of 1918 (40 Stat. 1093), the matter of the amount of the tax was governed by the discretion of the Commissioner in applying these provisions, and that, having once determined the amount, he could not by a second and later determination increase the amount which he had originally fixed for the tax, and, as the matter was within the discretion of the Commissioner, his original determination was final and conclusive both upon him and this court. It is now urged by brief in argument on the motion for a new trial that this point receive further consideration, and, as there are other cases on the docket involving the same question, it has been thought best to file this opinion supplemental to the one heretofore rendered.

At the outset, to avoid confusion of thought, it should be kept in mind that the question under consideration is not whether the Commissioner's action under the sections of the law above referred to is reviewable by this court. That question was settled by the Williamsport Wire Rope Co. Case, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, wherein it was held that this court had no jurisdiction to review his decision in such cases. The question in the case at bar is whether the Commissioner had authority to redetermine, change, or modify his original determination or reassess an additional amount against the plaintiff. Counsel for plaintiff, however, taking the Williamsport Wire Rope Co. Case, supra, as the basis for his argument, contends that the action of the Commissioner was final, and for that reason could not be changed even by himself when once it was made. It would seem a rather surprising doctrine that, if the Commissioner discovered the next day or the next month that he had made a gross error that he had no authority to correct it, but for reasons hereinafter stated we shall not discuss this point. Plaintiff's counsel cites a number of cases which he claims hold that, when a tribunal or an official is author-ized to act with discretionary power, when that authority has once been exercised, no further authority exists; and that, where lawful authority is delegated to an administrative officer, his acts in an administrative way are not subject to change or review. For the purposes of the argument, it may be conceded that, where the acts of the officer are administrative in their nature, a different principle prevails with reference to the review thereof than when he acts in a quasi judicial capacity. Nevertheless, it is uniformly held that the decisions of such tribunal or officer may be set aside on the ground of fraud or mistake, and it has also been held that an administrative officer whose decision is conclusive upon the courts may review and change his original decision, provided that no rights have become vested such as would arise from the issuance of a patent, a certificate, or something of that nature. Love v. Flahive, 205 U. S. 195, 199, 27 S. Ct. 486, 51 L. Ed. 768. Plaintiff also contends that in such event the burden of proof is upon the party seeking to have the decision changed to establish the fraud or mistake, and that even then it can only be done by a court and not by the officer or tribunal itself. The cases cited to support this rule would seem to show that it only applies when the government is seeking to set aside the act of one of its own officials. In Austin Co. v. Commissioner of Internal Revenue, 8 B. T. A. 628, affirmed (C. C. A.) 35 F.(2d) 910, 912, this particular question was involved in a case of the same nature as the one before us. With reference to the additional assessment made by the Commissioner, the court said:

"There is a presumption that he performed his duty." Citing United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131.

And with reference to the claim that the Commissioner lacked authority to make any further assessment, the court also said:

"Even though there was lack of authority to make such assessment upon a changed view of the same facts, there was not lack of authority to make it where there was fraud or mistake of law or fact in the original assessment. In this situation the burden was on the petitioner to show that the commissioner's action grew out of circumstances which did not warrant it."

But it would require too much time and space to review the decisions recited on behalf of plaintiff, and we do not think it necessary to analyze them, for the reason that in our opinion they have no application what-

ever to the case at bar, and we can rest our decision firmly on other grounds. Our reasons for this holding are set out below.

A full consideration of the question now under consideration requires that we should go somewhat into the history of the income and profits tax system in force at the time when the tax in question was assessed. The first experience of this country with an income tax was at the time of the Civil War and for a short period thereafter. During that period the rates of the tax compared to those now in force were very low, and the administrative provisions of the law were few and simple. The recovery of an amount overpaid could only be obtained in the same manner as an overpayment of any other tax, that is, when the payment had been made under protest and suit brought to recover the amount overpaid. This income tax law was repealed and finally adjudged unconstitutional. In 1913, the Constitution having been amended, another income tax law was placed upon our statute books. Here again the rates were, comparatively speaking, quite low, the administrative provisions few and simple, in no case was the act of the commissioner discretionary, and no changes were made in the method of obtaining refunds in proper cases. After this country became involved in the World War it became necessary to greatly increase the rates of income and profits taxes, which was done first by the act of 1916 and then by the act of 1918, under which the taxes in question in this case were levied. It became evident—in fact, was a matter of common knowledge—that the application of these high rates through a tax with which neither the government officials nor the citizenship of the country were familiar gave rise to numerous errors, inequalities, and hardships, both in favor and against the taxpayers, which called for action by Congress. The result was that an entirely new body of laws was built up under which, while the administrative proceedings were in part governed by authorized Treasury regulations, for the most part they were ordered and directed by statutes in a manner which compared to the methods theretofore existing may be said to be exceedingly specific. These statutory provisions applied to the income and profits taxes. To what extent they applied to other taxes it is not necessary for us to herein determine. The special object and purpose thereof was to make clear and plain, so far as possible, the procedure in administering the income and profits taxes, and they are to be found in connection with the revenue acts which imposed them. These acts made great changes in the proceedings for the assessment and collection of taxes and also for the refund of taxes erroneously or wrongfully collected. For the first time they provided for limitations upon the assessment and collection of taxes, for the refund of taxes, although no protest had been made when they were paid, and eventually gave the right to have the question of the taxpayer's liability judicially determined without having first paid the tax. So also while Congress was thus making the path of the taxpayer easier and more definite, it prescribed limitations on his right to object to assessments and claim refunds. It was also important that the government as well as the taxpayer should be protected from errors and mistakes that might enter into the assessment and collection of taxes.

The ultimate question in the case is not whether the decision of the Commissioner was final, but when it became final; and that, as we shall see, was only when the statute of limitations had run against the government. With the evident purpose of making it clear when the decision of the Commissioner became final, Congress, in the act of 1921, included a comprehensive and sweeping provision applying to all cases under the income and profits taxes with reference to the time when a case was finally settled, showing definitely when assessments made by the Commissioner became final, so that no further action could be taken. As the assessment which plaintiff claims was final was not made until 1922, this provision unquestionably applied thereto. It is found in a separate title of the act (42 Stat. 308), headed in manner and form as set out below:

"Title XIII.—General Administrative Provisions."

This major division was also subdivided, and in one of these subdivisions we find section 1312 of the same act (42 Stat. 313), which, in our opinion, clearly controls the judgment in this and similar cases. This section with its subhead is set out below in exactly the form that it appears in the act as passed by Congress:

"Final Determinations and Assessments

"Sec. 1312. That if after a determination and assessment in any case the taxpayer has without protest paid in whole any tax or penalty, or accepted any abatement, credit, or refund based on such determination and assessment, and an agreement is made in writing between the taxpayer and the Commissioner, with the approval of the Secre-

tary, that such determination and assessment shall be final and conclusive, then (except upon a showing of fraud or malfeasance or misrepresentation of fact materially affecting the determination or assessment thus made) (1) the case shall not be reopened or the determination and assessment modified by any officer, employee, or agent of the United States, and (2) no suit, action, or proceeding to annul, modify, or set aside such determination or assessment shall be entertained by any court of the United States."

This section (1312) appeared for the first time in the 1921 act, but was repeated verbatim et literatim under the same title and subhead in the Revenue Acts of 1924 and 1926, except that the words "without protest" are omitted. We think this statute so plain that "he who runs can read." A taxpayer had only to look at these headings to find under the head of "final determinations and assessments" whether the assessment which had been made against him was final. In Holmquist v. Blair (C. C. A.) 35 F.(2d) 10, 13, the court said with reference to this provision:

"Section 1312 provides that, where the Commissioner has determined and assessed the tax and without protest it has been fully paid or a refund accepted and a written agreement entered into by the Commissioner and the taxpayer (approved by the Secretary) 'such determination and assessment shall be final and conclusive' except for fraud, malfeasance, or misstatement of material fact. Sections 1309 and 1312 leave no doubt of the authorized power in the Commissioner to make re-examinations, redeterminations, and reassessments. From the above sections of the act it is clear that Congress authorized re-examinations by the Commissioner, and that the only limits thereon are that such must be made within four years (section 250 (d) and must be after written notice to the taxpayer after investigation of the necessity for such re-examinations. Section 1312 points out the way and the only way in which an assessment may be made final before expiration of the four-year period. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' Botany Mills v. United States, 278 U. S. 282, 289, 49 S. Ct. 129, 131, 73 L. Ed. 379."

Section 1309 (42 Stat. 310) referred to re-examinations.

In the same decision, Woodworth v. Kales (C. C. A.) 26 F.(2d) 178, is reviewed, and doubt is expressed as to whether, under the particular facts in the case, a contrary doctrine is held therein, but the court in its opinion says with reference to the case last cited that it prefers the rule laid down in Loewy & Son, Inc., v. Commissioner (C. C. A.) 31 F. (2d) 652, in which the same construction is placed upon section 1312 of the Revenue Act of 1921.

We do not overlook that in Holmquist v. Blair, supra, and Loewy & Son v. Commissioner, supra, the assessment was not made under an administrative provision, but the line of argument used in the decisions is equally applicable to the case at bar. It should be noted also that in the Austin Co. Case, supra, the assessments were made under a provision of the act of 1917 similar to the so-called relief provisions of the act of 1918 under which the assessments were made in the case at bar, and the act of the Commissioner was therefore administrative, but the right of the Commissioner to make a second assessment was upheld.

If it be claimed that prior to the passage of this provision of the law the first determination of the tax by the Commissioner under the relief provisions was final, this affords no reason for such cases not being included within the purview of the section under discussion if Congress intended to exempt them from its provisions, but rather furnishes a conclusive argument that Congress did not so intend. Assuming for the purpose of the argument that prior to the passage of section 1312 such acts have been final, it makes it the more evident that, if Congress had intended that this rule should continue, it would have so stated in this section which was three times enacted, and which we might say assumed by everyone to be all inclusive in its provisions. All the works on income taxation so treat it, and this has been the practice followed by the department, which has repeatedly reviewed its decisions upon special assessments under the relief act, upon the request of taxpayers.

It is said that, when the Commissioner determined the tax under the relief provisions of the act of 1918, and not only found that the plaintiff had been overassessed but sent the plaintiff a check for the amount of the overassessment, which plaintiff accepted, the whole matter was then settled. But section 1312 provides for exactly this kind of a case, and that such a settlement is not final unless an agreement is made in writing between the taxpayer and the Commissioner as provided therein.

It should also be noted that in section 273 of the Revenue Acts of 1924 (43 Stat. 296,

26 USCA § 1047) and 1926 (44 Stat. 55, 26 USCA § 1047) Congress provided that the Commissioner might reverse his action in the case of an abatement, refund, or credit and reassess and collect the amount. It expressly recognizes that in arriving at the correct tax to be collected there may have been additional assessments or collections, abatements, refunds, and credits, and clearly indicates that a refund, erroneous or otherwise, does not bar action by the Commissioner within the statutory period provided by law. An amount erroneously refunded becomes none the less a tax because of that fact.

Since the submission of the case at bar, we have been favored with further argument on this same question in the case of Taft Woolen Co. v. United States, No. J–61. In the brief on the case last cited, attention is called to provisions of sections 204(b) and 234(a)(8) of the Revenue Act of 1918 (40 Stat. 1060, 1078), which, it is said, were re-enacted in the Revenue Act of 1921 (42 Stat. 231, 255), and that there would be no necessity for these provisions, which are general in their nature, being enacted if the Commissioner had power otherwise to redetermine the tax in all cases. There might possibly be some force in this argument, if the particular provisions of these two sections had been re-enacted in their entirety. Such is not the case. The part of these provisions which had general application, namely, the words "the taxes imposed by this title and by Title III," was omitted and other changes made when the sections to which reference is made were re-enacted in the act of 1921, doubtless for the reason that Congress was making express provision elsewhere with reference thereto in section 1312 of the same act which we have set out above. As changed in the act of 1921, these provisions apply only to particular cases and state that in such cases the Commissioner not only may re-examine the return, as he could in all other cases, but that he "shall" do so in certain instances. (Italics ours.) Also, in the argument in the Taft Woolen Co. Case, supra, reference is made to sections 222(a) and 222(b) of the Act of 1918 (40 Stat. 1073), which it is said were re-enacted in the Act of 1921 (42 Stat. 249). An examination thereof will show that these provisions applied to amounts claimed by credits by the taxpayer by reason of taxes paid in foreign countries, or to refunds received therefrom and to nothing else. It was clearly necessary that a special provision should be made with reference thereto in a separate paragraph. It is also said that a Treasury regulation prevented the reopening of a case under circumstances such as existed in the case at bar, but a casual examination of the Treasury regulation with reference to the reopening of cases makes it plain that it applied only to cases where the taxpayer was making application to have the case reopened.

For the reasons above stated we hold that the Commissioner was not precluded from making a reassessment within the period prescribed by the statute of limitations, which in this case had not expired. It follows that the motion for a new trial must be overruled and it is so ordered.

BOOTH, Chief Justice, and WILLIAMS, Judge, concur.

LITTLETON, Judge (concurring).

On the theory that the court has jurisdiction to go into the question of the authority of the Commissioner to reconsider a determination made by him under sections 327 and 328 (40 Stat. 1093) and change his first determination and reassess and collect a portion of the profits tax theretofore determined under these sections, and refunded, I agree with the foregoing opinion and the conclusion reached therein, but I think the claim of the plaintiff should be denied on the ground that the court is without jurisdiction to pass upon the question of the authority of the Commissioner in this case.

This case relates entirely to a matter arising under the special-assessment provisions of the statute which confer discretionary power in the Commissioner to determine the facts and the rate of profits tax through a comparison of the plaintiff with other corporations specified in section 328. It appears that the plaintiff made a return for the year 1918 and paid a total income and profits tax of $91,944.37. This return showed a total net income of $124,488.61, the normal tax upon which was $4,158.30 and the excess profits tax, as computed under section 301 of the Revenue Act of 1918 (40 Stat. 1088), was $87,836.07. Thereafter plaintiff made application to the Commissioner for computation of its profits tax under section 328 of the said act, known as the special assessment provision, claiming that the profits tax of $87,-836.07 paid was too high and worked upon the plaintiff an exceptional hardship, as compared with other corporations similarly circumstanced. The Commissioner, in his discretion, concluded that this application should be granted, whereupon he made a computation under the special assessment sections, and on June 21, 1922, increased the net income of the plaintiff to $125,219.28, but con-

cluded that the excess profits tax, when determined under section 328, should be $57,736.39 instead of $87,836.07. As a result, $26,487.97 of the profits tax paid on the return was refunded. In March, 1924, the Commissioner reconsidered his action taken under the special assessment provisions and made another determination of the amount of plaintiff's profits tax under these provisions by comparison with other corporations and concluded that he had made a mistake; that the correct comparison and computation showed a profits tax of $73,368.23, and that, as a result, he had refunded $13,756.02 too much. No change was made in the net income. He recomputed and reassessed this amount and upon receiving notice thereof the plaintiff filed an abatement claim and a brief. Upon further consideration the Commissioner made a further comparison under the special assessment provisions, and upon a further recomputation allowed the abatement claim for $6,354.76 and rejected it for $7,410.26. In August, 1925, the collector made demand for the payment of the last-mentioned amount, and in September, 1925, the plaintiff paid it, together with interest in the amount of $592.82. In this suit plaintiff asks judgment for the amount upon the ground that the Commissioner's action on June 21, 1922, under the special assessment provisions refunding a portion of the excess profits tax shown upon the return, was final, and that he was without authority to reassess and collect any portion of the amount so refunded.

To go into the question whether the Commissioner had authority to change his determination and reassess a portion of the tax refunded under the special assessment provisions would be the same as inquiring into the correctness of such determination. The amount which the Commissioner finally determined the plaintiff owed was less than the tax imposed by section 301. The entire matter was embraced within the provisions of section 328. Plaintiff claims that the amount refunded lost its character as a tax and could be recovered only by a suit in which it would be incumbent upon the government to prove that a refund was erroneous. In such a situation the court would not have jurisdiction to go into the matter. Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985. And, however egregious the mistake in the first determination might have been, no portion of the amount erroneously repaid could be recovered by the government.

GRAHAM, Judge, concurs.