**PAGE, Internal Revenue Collector, v. LA-FAYETTE WORSTED CO.**

No. 2752.

Circuit Court of Appeals, First Circuit.

June 15, 1933.

Rehearing Denied July 26, 1933.

MORTON, Circuit Judge, dissenting.

---

Charles K. Hoover and Frank J. Ready, Jr., Sp. Attys., Bureau of Internal Revenue, both of Washington, D. C. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellant.

Laurence Arnold Tanzer, of New York City (Francis J. O'Brien, of Providence, R. I., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The Lafayette Worsted Company brought an action at law in the United States District Court for the District of Rhode Island against Frank A. Page, collector of internal revenue in that district, to recover taxes it claims were illegally assessed and collected. Jury trial was waived, and the case was tried before the District Judge. He entered judgment in favor of the plaintiff for $202,888.-20, with interest from January 19, 1926, and the defendant appealed.

The taxes in question are the income and excess profits taxes for the years 1918 and 1919. For 1918 the plaintiff's return showed a tax liability of $811,443.94, which was paid in due course. Upon a reaudit in 1922, the Commissioner determined that the correct tax for 1918 was $801,261.06, and the difference was refunded. For the year 1919 the plaintiff's return showed a tax liability of $586,-512.98, which was duly paid. Upon a reaudit in 1923 this amount was found to be too large by $4,378.68, and the excess was refunded.

In March, 1923, the plaintiff applied to the Commissioner for a special assessment of its taxes for the years in question under the provisions of sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). This application was granted by the Commissioner. The taxes for both years were accordingly redetermined upon a special assessment, so called. As a result of this special assessment, the Commissioner determined that the plaintiff had been overassessed $81,770.97 for the year 1918, and $86,021.56 for the year 1919. Those amounts were in due course refunded to the plaintiff.

In March, 1924, the Commissioner advised the plaintiff that his determination as to overassessments for the years 1918 and 1919 was erroneous. Jeopardy assessments of the amounts previously refunded, plus interest and *certain penalties,* were made forthwith, followed shortly by notice and demand for payment. Litigation followed by which the plaintiff endeavored to prevent the collection of the jeopardy assessments. The plaintiff failed in the litigation; and in January, 1926, it paid the disputed assessments, in the amount of $81,770.97, with interest amounting to $13,014.27, and a penalty amounting to $4,088.55 for the year 1918, and in the amount of $86,021.56, with interest amounting to $13,691.77 and a penalty of $4,301.08 for the year 1919. The total payments came to $202,888.20, which is the amount sought to be recovered in the present action. All payments were made under protest. The plaintiff has complied with all formalities required by law for the maintenance of this action.

The case was tried on a stipulation of facts agreed to by both parties, with the right to introduce further evidence not inconsistent with the facts stipulated. The stipulation clearly covered all the facts relating to the assessment of the taxes for the two years in question, the amounts, and the refunds, and in addition certain correspondence between the Commissioner and the taxpayer relating to the reauditing of the tax, the allowance of the overassessments, and the re-examination of the taxpayer's application for reassessment of the taxes for the years under sections 327 and 328 of the 1918 act, and the jeopardy

assessment. A deposition of the Assistant Commissioner of Internal Revenue with certain exhibits thereto attached was offered by the plaintiff as bearing on the grounds on which the Commissioner reopened the case and reversed his previous findings that there was an overassessment for the two years in question.

The District Court first excluded both the deposition and exhibits on the ground that it disclosed facts with reference to the business of other taxpayers engaged in similar business which should not, as a matter of public policy, be disclosed, and, in addition, was irrelevant to the issues in the case, apparently on the erroneous ground that the burden was on the Commissioner to prove on what grounds he based his jeopardy assessments. Austin Co. v. Commissioner (C. C. A.) 35 F.(2d) 910. Before the case was closed, however, he admitted the exhibits. The deposition was offered and marked and "left with the clerk for any subsequent use which may be made of it by the parties," but was not admitted.

■ The bill of exceptions, it is true, does not state that it includes all the evidence bearing on the issue presented by the defendant's exception; but from the bill of exceptions it clearly appears that the stipulation of facts, with the correspondence referred to, and the exhibits attached to the deposition, constitute all the evidence introduced at the hearing before the District Court, and on which the judge based his judgment. Since the record contains all the evidence on which the District Court based its judgment, the omission to so state in the bill of exceptions does not prevent the appellate court from considering the issue raised by a motion for a judgment for either party; exceptions being taken before judgment to the refusal to grant the motion. Board of Com'rs of Gunnison County v. Rollins, 173 U. S. 255, 19 S. Ct. 390, 43 L. Ed. 689; Crowe v. Trickey, 204 U. S. 241, 27 S. Ct. 275, 51 L. Ed. 454; St. Louis v. Western Union Tel. Co., 148 U. S. 92, 96, 13 S. Ct. 485, 37 L. Ed. 380.

■ While the motion for judgment by the defendant was not in the usual form, as it assigned as a reason that the plaintiff had not sustained the burden of proof that the taxes of the plaintiff have been overpaid, and that the taxes involved were erroneously assessed and collected, we think it raises an issue of law, if there was no substantial evidence to support a judgment for the plaintiff, or upon the facts stipulated and the evidence no other conclusion could be reached than that the de-

fendant was entitled to judgment. While on a general finding of facts no issue of law is raised by exception to the judgment, Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 22 S. Ct. 55, 46 L. Ed. 113, a motion before judgment that judgment be entered for the defendant and refused and exception taken at the time, raises a question of law. Fleischmann Cons. Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Maryland Casualty Co. v. Jones, 279 U. S. 792, 795, 796, 49 S. Ct. 484, 73 L. Ed. 960; St. Louis v. Western Union Tel. Co. supra; United States v. Smith (C. C. A.) 39 F.(2d) 851, 855.

■ The issue raised by the ruling and exception here is whether the Commissioner had authority, no fraud by the taxpayer being claimed, or mistake of fact being shown, to change an assessment once made and a refund paid, if done within the period of limitation for the assessment of taxes for the year in question.

The case of Woodworth v. Kales (C. C. A.) 26 F.(2d) 178, is cited as authority to the effect that, without fraud being shown, or mistake of law or in calculation, a Commissioner has no authority on the same state of facts to change an assessment once made and a refund paid. But in that case the question was as to the value of securities in 1913, and the change was made, not by the Commissioner who made the first valuation, but by a successor. Sections 1312 and 1313 of the Revenue Act of 1921 (42 Stat. 313), and sections 1006 and 1007 of the Revenue Act of 1924 (26 USCA § 1249 note, and § 1250), would have disposed of the case without further consideration. The reasoning of the able judge, therefore, has not the weight it might have if it were alone decisive of the case.

However, later decisions of the Circuit Courts of Appeals, in the case of Austin Co. v. Commissioner, supra, and Oak Worsted Mills v. United States (Ct. Cl.) 36 F.(2d) 529, Id. (Ct. Cl.) 38 F.(2d) 699, and especially McIlhenny v. Commissioner (C. C. A.) 39 F.(2d) 356, 357, which was approved by the Supreme Court in Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. Ed. 996, establish a contrary rule to that laid down in the Woodworth Case, and governs this case.

In the McIlhenny Case the court said: "But the sole question presented by the record before us is not whether the first action of the Commissioner in allowing the deduction was right or wrong, but whether having once determined the matter, and the tax computed upon such determination hav-

ing been paid, the Commissioner had power or authority, in the absence of fraud or other new evidence, to reopen the case, disallow the deduction theretofore allowed by him, and make a redetermination of the tax. In support of their contention that the Commissioner was without power to reopen the case and make a redetermination, the petitioners, the taxpayer's executors, rely upon Woodworth v. Kales (C. C. A. 6) 26 F.(2d) 178, and the Commissioner's order of January 20, 1923, while the Commissioner finds support for his opposite view in Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; L. Loewy & Son v. Commissioner of Internal Revenue (C. C. A. 2) 31 F.(2d) 652; Holmquist v. Blair (C. C. A. 8) 35 F.(2d) 10; Austin Co. v. Commissioner of Internal Revenue (C. C. A. 6) 35 F.(2d) 910; sections 1312 and 1313 of the Revenue Act of 1921, 42 Stat. 227; and sections 1006 and 1007 of the Revenue Act of 1924, 43 Stat. 253 (26 USCA §§ 1249 note, 1250). * * *

"In the case at bar, the statutory procedure was not followed, in that there was no agreement in writing, or otherwise, that the determination and assessment of February, 1924, should be final and conclusive. As a consequence, we are constrained to hold that the determination and assessment of 1924 were not final and conclusive, and that the Commissioner was not estopped or otherwise barred, by the payment and acceptance of the tax based on such determination and assessment, from reopening the case and making the further determination subsequently made by him."

In passing on the conclusion of the Circuit Court of Appeals in the McIlhenny Case, the Supreme Court in the case of Burnet v. Porter said: "The Court of Appeals sustained the power of the Commissioner upon the authority of McIlhenny v. Commissioner of Internal Revenue [C. C. A.] 39 F.(2d) 356; and was clearly right in doing so."

We think there was no evidence in the case at bar to sustain the ruling of the District Court. The judgment is contrary to the law laid down in the McIlhenny Case. It may be noted in passing, too, that the fact that a penalty was imposed in making the jeopardy assessments indicates that the Commissioner, on re-examination, must have had evidence of some irregularity on the part of the taxpayer.

The judgment of the District Court is reversed, and the case is remanded to that court, with instructions to order a judgment for the defendant.

MORTON, Circuit Judge (dissenting).

I regret that I am unable to agree with the opinion of my brethren. As the question presented is, as far as I have been able to discover, a novel one, I will state briefly my views upon it. I shall refer to the parties plaintiff and defendant as they appeared in the original action.

The Commissioner granted the plaintiff's application for special assessment under sections 327 and 328 of the Revenue Act of 1918. He made certain refunds and apparently closed the matter on that basis. Later, "no fraud by the taxpayer being claimed, or mistake of fact being shown" (majority opinion), the Commissioner undertook to set aside the special assessment and to reassess the tax in the ordinary way. The question is whether he had the right to do so. He acted within the prescribed period of limitations. None of the decisions referred to in the majority opinion present at all this situation.

I take it to be settled law that an assessment in the ordinary manner may be reopened and additional taxes assessed, until barred by the statute of limitations, and that this is equally true as to special assessments. Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. Ed. 996; McIlhenny v. Commissioner (C. C. A.) 39 F.(2d) 356; Oak Worsted Mills v. United States (Ct. Cl.) 36 F.(2d) 529. But may the Commissioner grant and withdraw the right to special assessment as his mind changes?

The statute itself provides two methods of assessing income and profits taxes, the ordinary and the special. They are radically different in principle; both are equally statutory. In the ordinary method, the income is determined and the statute is then applied to the result. It is wholly immaterial how the tax compares with what other similar concerns are paying. Apparently assessment in this way was found occasionally to work great injustice in individual cases, and sections 327 and 328 were enacted in order to meet such situations. They provide for "special" assessments so called by which the tax liability, computed in the ordinary manner, is compared with "the average tax of representative corporations engaged in a like or similar trade or business" (section 328 (a), and is adjusted accordingly. It is a more flexible method, and leaves much to the judgment of the Commissioner.

The purpose of the special assessment provision is, as therein stated, to prevent "exceptional hardship evidenced by gross dispro-

portion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328." It rests with the Commissioner to decide which way a corporation's tax ought to be assessed, whether ordinarily or specially. His decision on that point is final. There can be no review at the instance of the taxpayer. Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985. It seems to me that, in the absence of fraud or mistake the Commissioner's decision is equally binding on the government. The Commissioner's determination of the amount of any tax is held not binding, only because statutory provisions regarding the compromise of tax liabilities are regarded as requiring that result. See section 1312, title 13, Revenue Act of 1921, 42 Stats. 308, 313. Apart from this provision, it seems probable that the Commissioner's determinations of amounts would, in the absence of fraud or mistake, be binding and conclusive. See Woodworth v. Kales, 26 F. (2d) 178 (C. C. A. 6th), an able opinion by Judge Denison. That decision has been doubted, but only for the reason that it has been thought to give too little weight to the compromise provisions just referred to. See Oak Worsted Mills Co. v. United States (Ct. Cl.) 36 F.(2d) 529; Id. (Ct. Cl.) 38 F.(2d) 699.

These provisions have no bearing on the present question. The reasoning of Woodworth v. Kales is applicable to it. The Commissioner had the duty to decide which of the two methods specified in the statute should be followed in assessing the plaintiff's tax. Upon considering the matter, he decided that "exceptional hardship," etc., would be imposed upon the plaintiff if the tax were assessed in the ordinary way; and he therefore decided that the tax should be specially assessed. Having made this decision he was still free to change it later, if satisfied that fraud had been practiced, or that he had acted under a mistake of any kind. But where, as here, neither fraud nor mistake entered into his decision, I do not think it is open to the Commissioner to play fast and loose with such a basic question of fact. In deciding it, he exercises quasi judicial power. Such power does not rest on mere caprice.

There appears to be no decision by the Supreme Court which throws much light on the question. In a recent case, United States v. Great Northern Ry. Co. (November 7, 1932) 287 U. S. 144, 53 S. Ct. 28, 30, 77 L. Ed. 223, the Interstate Commerce Commis-

sion had made in favor of a carrier partial certificates which upon final settlement proved to be largely in excess of what the carrier was entitled to. The question was whether the carrier was liable to refund the excess. The court, after pointing out that there had been neither fraud nor mistake, "but merely a revision of judgment in respect of matters of opinion" (Cardozo, J.), held that the judgment of the Commission bound the United States and that the excess was not recoverable. There is nothing unusual in the view that administrative officers may have, within their sphere of action, power to bind the United States. See United States v. Kaufman, 96 U. S. 567, 24 L. Ed. 792; United States v. Real Estate Savings Bank, 104 U. S. 728, 26 L. Ed. 908; Bank of Greencastle's Case, 15 Ct. Cl. 225. In the case of Hostetter's Bitters, 32 Op. Attys. Gen. 481, the Attorney General advised the Commissioner of Internal Revenue that, when a tax had been refunded, the Commissioner was without power to retake the amount from the taxpayer under the exercise of the taxing power, unless fraud or mistake of law were shown. The Attorney General said: "The Commissioner was authorized, in at least a quasi-judicial capacity, to pass on the question and determine whether the taxes had been properly collected or not. His decision on that question was binding on the government." Page 486 of 32 Op. Attys. Gen. In Austin Co. v. Commissioner (C. C. A.) 35 F. (2d) 910, it was said: "Even though there was lack of authority [in the Commissioner] to make such assessment *upon a changed view of the same facts* [italics mine], there was not lack of authority to make it where there was fraud or mistake of law or fact in the original assessment." Moorman, J., page 912 of 35 F.(2d). Where fraud or mistake of law appear, the government has ample remedy. Kelley v. United States (C. C. A.) 30 F.(2d) 193.

The fact that under Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, it is absolutely discretionary with the Commissioner whether to grant a special assessment tends, I think, rather to support the view that, when the Commissioner has once decided to do so, and his decision has been acted on by both the government and the taxpayer, he is not at liberty to reverse it on a mere change of mind. To permit him to do so gives a power which hardly escapes arbitrariness, and makes issues which may be of vast consequence to the taxpayer depend rather upon personal whim than upon the judicial process.

I have some difficulty in discovering in the record all the facts necessary to a consideration of this appeal; but, as my brethren regard the record as sufficient, I am content to do so.

On Petition for Rehearing.

The petition for rehearing must be denied. We think, however, that the last sentence in the opinion of the court should be stricken out and in its place the following inserted:

"If there was no mistake as to the facts on which the commissioner based his special determination, nevertheless on re-examination of the records in his office he may have discovered new facts as to the income of other corporations in the same line of business and was entitled to the presumption that he acted on additional facts. Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 560, 561, 48 S. Ct. 587, 72 L. Ed. 985."

On page 341 of the opinion of the court, at the close of the paragraph ending with the words "but was not admitted," the following should be added:

"The court, however, stated and plaintiff's counsel admitted that the deposition contained no evidence material to the question in the case."

The order is: Petition for rehearing denied.