**BERRY et al. v. WESTOVER et al.**

District Court, S. D. California, C. D.

Feb. 19, 1947.

538

Zeutzius & Steffes, Geo. H. Zeutzius and A. P. G. Steffes, all of Los Angeles, Cal. for plaintiffs.

James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, and George M. Bryant, all of Los Angeles, Cal. for defendants.

WEINBERGER, District Judge.

This action was filed by the plaintiffs Marvin Berry and Elizabeth Jane Berry, who are husband and wife, in connection with the Internal Revenue Laws of the United States, and involves jeopardy assessments for the taxable years 1941, 1942 and 1943 made by the Commissioner of Internal Revenue against plaintiffs in the amounts as follows:

As against the plaintiff Marvin Berry for individual income taxes, interest and penalties for the calendar years 1941, 1942 and 1943, in the sum of $189,481.92, and as against the plaintiff Elizabeth Jane Berry for the calendar years 1942 and 1943 in the sum of $20,432.68.

The plaintiffs by their action seek injunctive and mandatory relief against the defendant Harry C. Westover individually, and as Collector of Internal Revenue, and against the United States of America, in relation to said assessments and liens filed in connection therewith.

An original complaint was filed herein on October 25, 1946, a first amended complaint on November 7, 1946, and a supplemental complaint on December 26, 1946.

The defendant Collector has answered the two last mentioned complaints; the defendant United States of America has entered a special appearance to the first amended complaint, and has answered the supplemental complaint.

The pleadings above mentioned will be analyzed hereinafter with more particularity.

A stipulation of facts was entered into herein between the parties, and after a trial on the evidence thereby stipulated, arguments were had, briefs were filed, and the issues submitted to the Court on the merits.

The following is a statement, in substance, of the pertinent facts contained in said stipulation and deemed to be true for the trial of the case.

On July 18, 1946, the Commissioner of Internal Revenue on behalf of the United States made separate jeopardy assessments against each of these plaintiffs as above mentioned.

The Collector of Internal Revenue at Los Angeles, California, on July 22, 1946, mailed notices and demands to the respective plaintiffs pursuant to Section 273(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 273(a).

Pursuant to Section 3672, I.R.C., 26 U.S. C.A.Int.Rev.Code, § 3672, the Collector, within a few days thereafter, filed notices of liens against each of said plaintiffs in the offices of the County Recorders of Kern County and Santa Barbara County, California.

The Collector of Internal Revenue did not send by registered mail, or otherwise, any notices of deficiency to either plaintiff under Section 272(a), I.R.C., 26 U.S.C.A. Int.Rev.Code, § 272(a) within 60 days after the making of the aforesaid jeopardy assessments.

As stated in said stipulation, on November 1, 1946, after demand made by plaintiffs and the commencement of this action, the Collector delivered to the plaintiffs' counsel certificates of release of said liens.

Subsequently on September 24, 1946, the same taxes were re-assessed by said Commissioner by jeopardy assessment against each of the plaintiffs, for the same amounts as aforesaid. Notices and demands were sent to plaintiffs on October 14, 1946, which was more than 10 days after receipt of said assessments by the Collector, and notices of liens based upon said assessments were filed against the plaintiffs.

On November 12, 1946, the Commissioner made a third jeopardy assessment against each plaintiff for the same taxes and tax years covered by the July and September assessment lists aforesaid; on November 12, 1946, the Collector at Los Angeles received a telegram, a copy of which is attached to the stipulation of facts, wherein the Commissioner stated: "Special Number 7 jeopardy assessment is made and certified to you as follows," and wherein the Commissioner described the assessments and the years for which the taxes were due, and requested the Collector to issue notice and make demand for immediate payment and if payment should not be made immediately to file notice of liens. Also attached to the stipulation of facts is a copy of a document headed "Commissioner's Telegraphic Assessment List," which document contains the same wording as the telegram, and is dated November 12, 1946, and which, according to the stipulation of facts, was received by the Collector in Los Angeles by mail on November 18, 1946.

It is further agreed in said stipulation that the characterization therein of the September and November assessments, as assessments, shall not be taken to constitute an admission by plaintiffs, that they, or either of them, were assessments in fact or in law.

On November 12, 1946, the defendant Collector issued, and on November 13, 1946, served upon plaintiffs, notices and demands based upon said November assessments. Copies of said notices and demands are attached to the stipulation, and included in each of said notices and demands is the statement "Demand is hereby made for the immediate payment of the unpaid balance thereof. If payment is not made (here follows an indication that the words of the printed form 'within 10 days from date of this notice' have been stricken out at this point) the law provides that interest will accrue at the rate of 6 percent per annum from the date shown below until paid." Then about a line below appears the typed word "immediately" followed by an exclamation point. Below this line, and after the date November 12, 1946, we find the wording "To avoid further interest the amount stated on this notice must be paid to Collector of Internal Revenue at Los Angeles 12, Calif." Following this, and on the same line, the words of the printed form "within 10 days from the date stated above" have been stricken out.

Within two days following the issuance of the notices and demands and after the same had been served upon plaintiffs, the Collector filed, in three California Counties, notices of liens against the plaintiffs, which notices of liens were dated November 12, 1946.

The stipulation further recites that on November 13, 1946, each plaintiff received by registered mail, a deficiency letter covering the taxes and tax years referred to in this action, which letters were dated November 2. The statement attached to each of the letters is to the effect that it is sent pursuant to the September 24, 1946 assessment.

It is further recited in the stipulation that on November 15, 1946, each plaintiff received by registered mail a deficiency letter bearing date of November 14, 1946, which letters are similar to those described in the preceding paragraph, except that they refer to the assessment made November 12, 1946.

The stipulation further recites that the plaintiffs have not paid, and without liquidating their property can not pay, the sums demanded by the Collector of Internal Revenue; and also that plaintiffs have not offered to post any bond under the provisions of Section 273, I.R.C., for the reason that such bond would require the

creation of liens in amounts in excess of those recorded by the Collector.

It is further stipulated that plaintiffs are deemed to have testified that their present net worth is in excess of $400,000, and it is essential to the conduct of their business that they obtain large amounts of credit both in the nature of cash loans from banks and commodities purchased without the necessity of paying cash therefor at the time of delivery. That by reason of the existence of notices of liens on the public records as aforesaid, banks and creditors have refused and still refuse any loans or credit to plaintiffs, and have advised that they will continue to so refuse while such liens remain of record; that the assets constituting the net worth of plaintiffs consist almost entirely of real property and tangible personal property which is necessary to the conduct of plaintiffs' business, and the amount of cash available for the use of plaintiffs is entirely inadequate as a working capital and, unless plaintiffs can immediately obtain credit from said banks and other creditors, their business will be ruined and operations cannot continue.

It is also stipulated that the Collector is deemed to have testified that he has not issued any warrants of distraint based upon any of the assessments involved herein; it is further stipulated that the United States of America has not filed any action against the plaintiffs in any District Court of the United States to enforce any of the tax liens referred to in this action.

The supplemental complaint was filed by order of court based upon consent of counsel for the Government, after the stipulation of facts had been entered into and approved, and refers mainly to the third, or November, 1946 assessment. Relief in addition to that sought by the first amended complaint is asked. A summary of the prayers of both complaints is as follows:

By the first amended complaint, a judgment is sought restraining the defendants, their agents, etc., from taking or prosecuting any further action or proceedings against plaintiffs based upon the void July, 1946 jeopardy assessments and the void purported second jeopardy assessments, and

from beginning, making or prosecuting any distraint or other proceedings for the enforcement or collection of any claimed deficiencies, except in accordance with the provisions of Section 272, Internal Revenue Code, and a judgment ordering the defendant Collector to issue certificates of releases and to release of record all liens based upon the void jeopardy assessments and void purported second jeopardy assessments, and for such other and further relief as may be necessary and appropriate.

By the supplemental complaint, plaintiffs pray that in addition to the relief sought by the first amended complaint, the Court enter its judgment decreeing:

1. That the jeopardy assessments, made by the Commissioner of Internal Revenue against plaintiffs in July, 1946, became nullities and unenforceable, as a matter of law, by reason of the failure of the Commissioner to mail notices of deficiencies to plaintiffs within 60 days thereafter.

2. That it was the legal duty of the defendant Collector to issue and deliver to plaintiffs certificates of release of the July tax liens, by virtue of Section 3673 (a), I.R.C., 26 U.S.C.A. Int.Rev.Code, § 3673(a), and the Treasury Regulations issued thereunder.

3. That, even assuming authority to make more than one jeopardy assessment, for the same tax, the purported liens, based on the second jeopardy assessments made against plaintiffs in September, 1946, and the notices of said liens, became nullities and unenforceable, as a matter of law, by reason of the defendant Collector's failure to issue and mail or deliver to plaintiffs "notices and demands" within 10 days after receipt by him of the September assessment list, as required by Section 3655 (a), I.R.C., 26 U.S.C.A. Int.Rev.Code, § 3655(a).

4. That there is no legal authority vested in the Commissioner of Internal Revenue for the making of more than one jeopardy assessment for the same tax deficiencies.

5. That, even assuming authority to make more than one jeopardy assessment, it appearing that the second jeopardy assessments have never been abated, the third

jeopardy assessments made in November, 1946, were void and unenforceable.

6. That the receipt by the defendant Collector, on November 12, 1946, of the telegram in respect of the purported jeopardy assessment of that date did not constitute the receipt by him, on November 12, 1946, of an assessment list certified by the Commissioner, within the meaning of the provisions of the Internal Revenue Code.

7. That, even assuming the propriety of the third jeopardy assessments, the purported liens based thereon and the notices filed in respect thereof became nullities and unenforceable because (1) alleged notices and demands were issued and delivered demanding immediate payment instead of payment within the statutory 10-day period, and (2) notices of liens were filed before expiration of the 10-day period allowed for payment by Section 3655(b), I.R.C.

8. That the United States is a proper party defendant herein and appeared generally in this action before making any objection to its inclusion herein as a party-defendant; that the United States has no valid lien against the property of the plaintiffs arising out of the said jeopardy assessments referred to in the first amended complaint and supplemental complaint.

9. That plaintiffs be granted the injunctive and mandatory relief prayed for in their first amended complaint and for such further and additional relief as may be meet and proper.

10. That the defendants, their officers, agents, employees, attorneys and all persons in active concert or participation with defendants, or either of them, be permanently restrained and enjoined from taking or prosecuting any further action or proceedings against plaintiffs based upon the void jeopardy assessments above mentioned and mentioned in plaintiffs' first amended complaint, and from beginning, making or prosecuting any distraint or other proceedings for the enforcement or collection of any claimed deficiencies, penalties or interest, except in accordance with the provisions of Section 272, Internal Revenue Code, and for such other and further relief as may be necessary and appropriate.

11. That the defendant Collector be ordered and directed to issue certificates of releases and to release of record all liens based upon the void jeopardy assessments referred to above and in the first amended complaint against plaintiffs, in all counties where said defendant Collector has filed notices of liens, and for such other and further relief as may be necessary and appropriate.

In their briefs and arguments, plaintiffs contend that the jeopardy assessments of July, 1946 against each plaintiff became nullities and unenforceable as a matter of law by reason of the failure of the Commissioner of Internal Revenue to mail deficiency letters within 60 days as required by the provisions of Sections 273(b) and 272 (a), I.R.C.

There is no evidence to warrant a conclusion that defendants threaten to proceed to enforce collection under said July, 1946 assessments; counsel for the defendants at the hearing held November 1, 1946, stated the Commissioner would take no further action under said assessments, and that it is the position of the defendants that said assessments are void; and, at that hearing counsel for the defendants handed to counsel for the plaintiffs certificates of release of all liens recorded under said assessments.

The relief sought by plaintiffs as relates to the July, 1946 assessments had already been given them before the filing of the first amended complaint, and we make no finding with reference to such July assessments.

While in their first amended complaint plaintiffs have alleged in paragraph XIV thereof that at the time the jeopardy assessments were made, no facts existed which justified any belief on the part of the Commissioner of Internal Revenue that the assessment or collection of any deficiency was or would be jeopardized by delay, their counsel's briefs have not defined such allegations as one of the issues herein, and we shall make no ruling thereon. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985, and many other cases have held that the exercise of discre-

tion by the Commissioner in such respect is not reviewable.

Counsel for plaintiffs mentioned in their argument at the hearing on December 23, 1946 that although they previously had considered that the September assessment was intended as a jeopardy assessment, they noticed that the certificate did not show on its face that it referred to a jeopardy assessment. We note, however, that counsel have not deemed it necessary to call attention to this fact in their pleadings or their briefs, and note also that throughout the progress of this proceeding this matter has not been urged as a defect in said assessment. On February 5, 1947, we interrupted our consideration of this case after submission, reopened the matter, and permitted counsel to introduce evidence which provides an explanation of certain figures, etc., appearing on the assessment list, and which established to our satisfaction that the record shows the September assessment was intended by the Commissioner to be, and was by him made as, a jeopardy assessment.

In their answers, the defendants have set up their defense that this suit cannot be maintained for the reason that it seeks to restrain the assessment or collection of a tax, and they cite Section 3653, I.R.C., 26 U.S.C.A. Int.Rev.Code, § 3653: "Except as provided in sections 272(a), 871(a) and 1012(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

In their briefs and arguments, counsel for defendants have pointed out that plaintiffs do not contend that the taxes are not owing. This is correct. Also, counsel for defendants argue that the plaintiffs have established the existence of no circumstances which show hardship and inequity sufficient to justify the intervention of the equitable powers of the Court.

With this latter premise, we also agree. See: Kaus v. Huston, 8 Cir., 120 F.2d 183; Huston v. Iowa Soap Co., 8 Cir., 85 F.2d 649, 108 A.L.R. 173; Sturgeon et al. v. Schuster, 10 Cir., 158 F.2d 811. In fact, it is our understanding that counsel for the plaintiffs do not maintain that they are entitled to injunctive relief other than by virtue of the provisions of Section 272(a), I.R.C., which Section is excepted from the effect of Section 3653, I.R.C. In their argument before the Court on November 25, 1946, counsel for plaintiffs refer to such Section as giving plaintiffs their right to an injunction, stating that defendants may proceed only under Section 272 to collect the tax. We quote from the argument of counsel for plaintiffs (tr. p. 10): "We are not seeking to restrain the Commissioner from collecting the tax. We are seeking to make him follow the rules of the game."

In order that this suit may be maintained, in the face of the prohibition contained in Section 3653, I.R.C., it is therefore necessary that plaintiffs show the presence of conditions which justify the injunction mentioned in Section 272(a). This Section reads in part: "Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

Thus it must be established by plaintiffs that "such prohibition is in force."

The conditions which set "such prohibition in force" are found in the first portion of Section 272(a), immediately preceding the portion last above quoted: "(a) (1) If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect to the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. No assessment of a deficiency in respect to the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final."

It is not controverted by counsel for the parties that a deficiency has been determined by the Commissioner against each

plaintiff for the years mentioned in the stipulation of facts.

It is not contraverted by counsel for the parties that a deficiency notice has been mailed, in fact, it is admitted by the parties that two deficiency notices have been mailed to each plaintiff, one dated November 2d, 1946, regarding the September assessment, and one dated November 14, 1946, regarding the November assessment.

But at this point counsel come to the parting of the ways. The defendants maintain no steps have been taken under Section 272(a) which can begin the "time such prohibition is in force"; that the deficiency letters were mailed under Section 273, I.R. C., which provides in part:

"(a) Authority for making. If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess such deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) and notice and demand shall be made by the collector for the payment thereof.

"(b) Deficiency letters. If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 272(a), then the Commissioner shall mail a notice under such subsection within sixty days after the making of the assessment."

Plaintiffs contend that defendants are not proceeding and cannot proceed under Section 273, I.R.C., for the reason (among others which they mentioned in their prayer for relief in their supplemental complaint) that as a matter of law there is no legal authority for more than one jeopardy assessment covering the same taxes, after a first jeopardy assessment has become a nullity and unenforceable. Plaintiffs in their brief filed November 30, 1946 quote Section 273 (a), I.R.C., stating that the section contains no mention whatsoever of more than one jeopardy assessment, and argue that on the contrary the requirement that the Commissioner should make a jeopardy assessment "immediately" after the formation of a belief by him that the assesment or collection of a deficiency will be jeopardized,

negatives the idea that there may be successive or additional jeopardy assessments for the same tax deficiency. Further, they argue, the word "immediately" connotes a single procedure.

Counsel for plaintiffs cite Woodworth v. Kales, 6 Cir., 26 F.2d 178, 179, in which case, say counsel, there was a situation analogous to the one existing in the case before us. A careful reading of the opinion fails to disclose similar circumstances. In the case just cited, the Commissioner had placed a certain valuation upon some Ford Motor Company stock, after which the owner made a sale of the stock, and reported her profit on the basis of the above mentioned valuation in her 1919 return. The tax was assessed on such basis and paid; a deficiency assessment was later made on other items, and the assessment including the return on the sale of the stock was not disturbed, but was confirmed and approved by the Commissioner. In 1921, the correctness of the return was again confirmed by another Commissioner. In 1922, the return was confirmed by a still different Commissioner. In March, 1925, the last mentioned Commissioner levied a deficiency assessment on the theory that the 1913 valuation was too low, and thus a greater profit was realized than was shown on the original return. Plaintiff paid the tax under protest and filed suit for a refund. The only justification advanced by the Commissioner for the re-assessment was " 'a new and better view of the same facts' based upon a 'matured and better judgment.' " The Court in its opinion stated: "The argument is also made that, since several statutory references imply, and the plaintiff concedes, that a reassessment might have been made, even after all these confirmations, if there had appeared fraud or mistake, or misleading, or new evidence, or clerical error, or mistake of law on the part of the commissioner, therefore the assessments formerly made were open, and were subject to revision even to the extent of a new inference on the same facts. * * * When a public official, exercising his discretion, has decided a matter of private obligation, and the decision has been accepted and acted upon, it is natural to suppose that his right to

544

change his mind and overrule the decision should bear some analogy to the situation between individuals, in their contracts or their lawsuits. Their conclusions may always be revoked for fraud or misleading, or mutual mistake of fact, sometimes for newly discovered facts, and sometimes for clerical error or mutual mistake of law; judgments between them can sometimes be set aside on these grounds. All these considerations naturally apply to such official action as here involved; and, the commissioner has authority only to carry out the statute, and cannot give himself more by supposing that he has more, his mistake of law will often, or usually, justify a revision of his conclusion. No analogy drawn from the rights of individuals or from the powers of courts can be found for revoking a conclusion once deliberately made and acted upon and basing the revocation merely on the idea that the second conclusion is the result of a better matured judgment. For these and other considerations we conclude that authority to review and revise such a valuation as this for fraud, mistake, or analogous ground is reasonably to be implied from the statutes, while power thus to repudiate the former action, merely because the commissioner has changed his view (or his predecessor's) of the evidence, is not reasonably implied."

The reasoning in the Woodworth v. Kales, supra, opinion was questioned in Page v. Lafayette Worsted Co., 1 Cir., 66 F.2d 339, certiorari denied, 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596. The opinion in the latter case discloses a situation where certain taxes previously assessed and paid were refunded; later the Commissioner determined the refund was erroneous, and made jeopardy assessments of the amounts previously refunded. In its opinion, sustaining the action of the Commissioner, the Circuit Court stated: (at page 341 of 66 F.2d)

"The issue raised by the ruling and exception here is whether the Commissioner had authority, no fraud by the taxpayer being claimed, or mistake of fact being shown, to change an assessment once made and a refund paid, if done within the period of limitation for the assessment of taxes for the year in question.

"The case of Woodworth v. Kales, 6 Cir., 26 F.2d 178, is cited as authority to the effect that, without fraud being shown, or mistake of law or in calculation, a Commissioner has no authority on the same state of facts to change an assessment once made and a refund paid. But in that case the question was as to the value of securities in 1913, and the change was made, not by the Commissioner who made the first valuation, but by a successor. Sections 1312 and 1313 of the Revenue Act of 1921 (42 Stat. 313), and sections 1006 and 1007 of the Revenue Act of 1924 [26 U.S.C.A. Int.Rev.Acts, pages 122, 123] would have disposed of the case without further consideration. The reasoning of the able judge, therefore, has not the weight it might have if it were alone decisive of the case.

"However, later decisions of the Circuit Courts of Appeals, in the case of Austin Co. v. Commissioner, [6 Cir., 35 F.2d 910], supra, and Oak Worsted Mills v. United States, 36 F.2d 529, [68 Ct.Cl. 539,] Id., Ct.Cl., 38 F.2d 699, and especially McIlhenny v. Commissioner, 3 Cir., 39 F.2d 356, 357, which was approved by the Supreme Court in Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L. Ed. 996, establish a contrary rule to that laid down in the Woodworth Case, and governs this case."

. Counsel for the plaintiffs also quote language from Lyon v. Alley, 130 U.S. 177, 9 S.Ct. 480, 32 L.Ed. 899, which language they designate as conclusive on their point that Section 273, I.R.C., if given its proper meaning and effect, permits of only one jeopardy assessment by the Commissioner.

In Lyon v. Alley, supra, the Court dealt with a sale upon a judgment for unpaid state taxes. An assessment list of lots to be affected by an improvement tax had been prepared, and the lot whose title was in question had been omitted from the list; a purchaser of the lot had examined the record prior to his purchase, and was held in a suit to quiet title, to be a bona fide purchaser as against the holder of the title under the tax lien sale. We note also that after the property had been sold to the bona fide purchaser, the assessing official made an interlineation on the assessment roll to include the lot. The Court

stated that this interlineation was of no effect, and showed that the omission from the roll of a description of the lot was not a "mere mistake" of the officers, but result of an agreement between the original owner and the officers.

The facts in the case last mentioned are entirely dissimilar, and although we should be indeed happy if either counsel or our own research could uncover a case "conclusive" as to the views of either the plaintiffs or the defendants, we cannot agree that the case last mentioned is of any assistance in our labors with reference to the problem before us.

The opinion in the J. H. Reese case, J. H. Reese v. Commissioner, reported in 15 B.T.A. 1261, 1264, and cited by plaintiffs, contains the following language:

"It is enough to say that in this case the Commissioner did not act in time to prevent the falling of the bar of the statute of limitations against collection. The mere making of a jeopardy assessment within the 5-year limitation period gives no right of collection when the notice required by the statute is not mailed until after the expiration of the 60-day period and beyond the 5-year period of limitation for the determination, assessment and collection of the tax. The mailing of the notice is necessary to make the jeopardy assessment enforceable * * *

"None of the provisions of the statute can possibly be construed to give the Commissioner 5 years and 61 days to complete a valid assessment of a deficiency so as to authorize him to make collection thereof."

Plaintiffs have made no suggestion that the bar of the statute of limitations has intervened as to any of the acts of which they complain.

Counsel for the defendants points out that the Commissioner is merely asking to correct technical mistakes made by his agents and to assess correctly the amount of tax liability due from plaintiffs; that there is only one liability, only one tax due from the plaintiffs, and that plaintiffs have acquired no "vested right" because of such mistakes.

The opinion in Wright & Taylor v. Lucas, 6 Cir., 45 F.2d 75, 78, contains pertinent language on the principle advanced by the defendants, although the facts there also, are not analogous: "Passing to the question of the constitutionality of section 611 [26 U.S.C.A. Int.Rev.Acts, page 461] the crux of the whole matter is that appellant's cause of action depends upon whether it is absolutely free from revenue taxes for 1918. If so, its immunity was acquired because it had taken advantage of governmental generosity extended under a mistake of law and not because the taxes were originally invalid. Whatever strength there may be in this position, we do not regard it as proof against the taxing power of the government. * * * We cannot believe that it acquired a vested right in the error of governmental agents or that the bar of the statute under such circumstances was equivalent to a tax receipt. The formula for the remedy is not important. It may have been by a repeal of the statute of limitations (citing cases) or by new legislative construction of an old statute (citing cases) or by the ratification of an unauthorized act (citing cases) or by any or all such combined."

Attorneys for the defendants further argue that Section 273(e), I.R.C., which provides that a jeopardy assessment may not be made after the decision of the Board has become final or after the taxpayer has filed a petition for review of the decision of the Board contains the only limitation on the power of the Board to make a jeopardy assessment, unless, of course, such assessment is barred by the statute of limitations. Attention of the Court is also directed by defendant's counsel to the fact that the November jeopardy assessment was made only after the plaintiffs had protested the validity of the September assessment.

Congress has seen fit to surround, with many safeguards, the process of collection of the revenue by which our government is sustained. As was said in Cadwalader v. Sturgess, 3 Cir., 297 F. 73, 75: "It is necessary to the maintenance of the government that the collection of taxes imposed for this purpose shall not be hindered or delayed, either by those who are charged with their payment, or by the courts in their behalf."

Likewise, in many instances, the powers of those entrusted with the duties of gathering this revenue have been safeguarded by statute and by judicial decisions to the end that certain of their errors and mistakes shall not in all cases impede the collection or result in loss of revenue justly due the government.

For example, the Commissioner may determine part of a deficiency, then may make a redetermination and reassessment and collect another part of the deficiency. Commissioner of Internal Revenue v. Wilson, 10 Cir., 60 F.2d 501. He may re-open the tax liability and make another determination of such liability, until the statute runs against him. L. Loewy & Son, Inc., v. Commissioner, 11 B.T.A. 596, affirmed in 2 Cir., 31 F.2d 652. He may make an assessment, then after payment, refund the tax; then if he deems the refund in error, he may redetermine and reassess the tax within the statute of limitations. Alexander T. Sokolow et al., Executors, v. Commissioner, 22 B.T.A. 349.

In L. Loewy & Son, Inc., v. Commissioner, 11 B.T.A. 596, affirmed in 2 Cir., 31 F.2d 652, the opinion of the Board, quoting from other cases, reads at page 600: "There is no provision in the various Revenue Acts which provides that the Commissioner may not make more than one assessment in respect of the tax for any year." (Quoting from [Appeal of] Warner Sugar Refining Co., 4 B.T.A. 5). "We know of no statute or decision which in this case in any way limits the right of the Commissioner to reopen it (tax liability) as often as he chooses until such time as the statute of limitations has run against him." (Quoting from [Appeal of] Masajiro Furuya, 4 B.T.A. 357).

It appears logical that if, as was decided in Page v. Lafayette Worsted Co., 1 Cir., 66 F.2d 339, the Commissioner has power to re-assess in a jeopardy assessment an amount previously refunded, he here had the power, (within the period of the statute of limitations) to make more than one jeopardy assessment covering the one liability; the fact that the assessments before us were jeopardy assessments and were followed by liens against the property of the plaintiffs was the result of the necessities of the case.

The plaintiffs have argued that the notices of liens now recorded against them for the taxes evidenced by the jeopardy assessments involved herein are preventing their obtaining credit and loans necessary for the carrying on of their business; yet, they have not shown that they are in any worse position than that in which they would have found themselves had the Collector, as plaintiffs' counsel phrases it, adhered to the "rules of the game" and sent the notice within the 60 day period following the making of the July jeopardy assessment. They seek the removal of the liens now recorded to secure payment of taxes alleged to be due, and not denied by plaintiffs to be due the Government. Admittedly, plaintiffs seek this relief in order that they may obtain money and credit from various persons and firms—which lenders, it is reasonable to assume, would in turn require for their security liens upon the very property affected by the jeopardy assessments herein.

We cannot agree with plaintiffs that the failure of the Commissioner to mail a notice of deficiency after making the July assessment deprived said officer of the right to set again in motion the machinery necessary to insure collection of the taxes involved in this action.

We hold that the Commissioner had the power to make the September jeopardy assessment; that the deficiency notices thereafter mailed to the plaintiffs were those commanded to be sent by Section 273(b), I.R.C., relating to jeopardy assessments, and thus the "time during which the prohibition is in force" as prescribed by Section 272(a), I.R.C. had not commenced to run.

Plaintiffs have failed to establish the existence of condition warranting an exception to the prohibition contained in Section 3653, I.R.C., and are therefore barred by such Section from maintaining this action for the purpose of restraining the assessment or collection of the taxes assessed against them under the September jeopardy assessment.

We can find neither jurisdiction nor necessity for passing upon the validity of any of the acts of the defendants subsequent to the making of said September jeopardy assessments. Neither do we deem it necessary to decide any of the motions of defendants, other than as herein indicated.

Counsel for defendants will prepare findings and judgment in accordance with this opinion and the rules of this Court.